EDGEMAN *v.* STATE.

Opinion delivered January 26, 1931.

*Brock & Williams,* for appellant.

*Hal L. Norwood,* Attorney General, and *Robert F. Smith,* Assistant, for appellee.

MEHAFFY, J. The appellant was indicted, tried, and convicted in the circuit court of Franklin County of the crime of seduction.

Hazel Maynard testified that she was eighteen years old, the daughter of W. R. Maynard, and lived in the Ozark district of Franklin County; that she had known George Edgeman for four or five years; that he began keeping company with her about four years ago, and ceased keeping company with her in September, 1929; that they were engaged to be married some time in 1928.

Witness' people objected to her keeping company with Edgeman. After they became engaged, witness submitted to have sexual intercourse with him. The first time was in March, 1929, and they had been engaged about three months. She would not have had intercourse with him if they had not been engaged to be married. She testified that she did not submit readily; that he begged her a good many times before she submitted. Has had intercourse with him at other times, the last time being in September, 1929. She became pregnant and now

has a child. It was four months old the 21st of October. They would meet at different places.

About a month after she found out she was pregnant, she told Edgeman, and he said he would not marry her because her folks would not let them stay married. Witness then told him they could be married for a while, and that would keep her from being disgraced, and he said he would.

After that he said he wouldn't marry no damn woman; he said he had three that way, and they'd be raising hell if he married her. He refused to marry witness.

Witness' folks did not want her to marry him. She begged him to marry her, and he would not do it.

A number of witnesses testified about the appellant and prosecuting witness being together on several occasions. Appellant, however, does not abstract this testimony.

The appellant George Edgeman, testified that he was engaged to marry Hazel Maynard, but said they never did because he never could get enough money; saw her two or three times each month; had intercourse with her and had never refused to marry her; that he tried to get her to marry him after the baby was born, but she told him he was one day too late. Her folks would not let him keep company with her; had to slip around to meet her. She told appellant that her folks would kill them if they married. Witness testified he had been willing to marry her all the time, and when arrested told Mr. Hayden he was ready to marry her any time. When they were first engaged they did not marry because he did not have any money and because she said her folks would kill them both.

Appellant was convicted and sentenced to one year in the penitentiary. He prosecutes this appeal to reverse said judgment.

Appellant concedes that the record does not show the saving of exceptions. His motion for a new trial alleges

that the verdict is contrary to the evidence, and that, subsequent to the verdict, the prosecuting witness had made the statement that George Edgeman had tried to get her to marry him and go away with him, but she said she was afraid her father would kill both of them, and she refused to marry, and that it was not George's fault. Two witnesses made affidavit that they heard prosecuting witness make the above statement. The prosecuting witness, however, testified that her folks objected, but that she would have married him but he refused to marry her. And the appellant himself testifies that the reason he did not marry the prosecuting witness was that he did not have the money, and that she said that her folks would kill them both. It appears therefore that the appellant himself testified that the prosecuting witness made the same statement to him that it is alleged she made to the persons whose affidavits were filed in support of the motion for a new trial. There is nothing in the newly discovered evidence that would have any bearing at all on the case except it might impeach the credibility of the prosecuting witness.

In discussing this question this court recently said: "It is finally insisted that error was committed in refusing to grant a new trial on account of newly discovered evidence. This evidence was to the effect that Miss Ashley had stated that she would get money from appellant before the trial. As this testimony tended only to impeach the credibility of the witness, the court committed no error in refusing to grant a new trial on that account." *Snetzer* v. *State,* 170 Ark. 175, 279 S. W. 9.

This court has often held that as a general rule newly discovered evidence that goes only to impeach the credibility of a witness is no ground for a new trial. *Morris* v. *State,* 145 Ark. 241, 224 S. W. 724.

It is earnestly contended by appellant that there is no evidence that Hazel Maynard was a single, unmarried person, and that this, being one of the charges in the indictment, must be supported by proof. Appellant calls

attention to a number of cases in support of this contention. The cases relied on by appellant do not, we think, decide the question involved here. It may, however, be conceded that the allegation in the indictment that Hazel Maynard was a single and unmarried female person must be proved.

There is some conflict in the authorities as to the character of proof required, some courts holding that, the prosecuting witness being the only person who could know positively whether she was married, it is necessary for her to testify that she is unmarried. Other courts hold that this fact or statement in the indictment may be proved by circumstantial evidence. This court has held that the fact that the prosecutrix was unmarried may be shown by circumstantial evidence. *Smedley* v. *State,* 130 Ark. 149, 197 S. W. 275. See *Cook* v. *State,* 102 Ark. 363, 144 S. W. 221; *Nichols* v. *State,* 92 Ark. 421, 122 S. W. 1003.

She testified that she was eighteen years old, that her child was about four months old, and that she had known appellant four or five years; that he began to go with her about four years ago and ceased keeping company with her in September, 1929. It appears from the undisputed evidence that she was only about fourteen, probably not that old, when appellant first began to go with her. It is also undisputed that she lived with her father, who was W. R. Maynard; that she was known as Hazel Maynard. Then she and appellant both testified that they were engaged to be married, and it is not disputed that there was a promise of marriage and that they had intercourse. The testimony is in conflict as to the reason they did not get married, but that is immaterial because the appellant himself says that it was because the prosecuting witness said her father would kill them if they did.

The appellant testified that something like two years before the trial he worked for the Maynards, and that he began to court the girl about a month before he started

working there. Appellant does not dispute the testimony of the prosecuting witness that he had known her four or five years. He lived in the same community and worked for her father. This evidence shows that they had known each other since the girl was thirteen or fourteen years old; that they were engaged to be married, and, according to appellant's testimony, the only reason they did not get married was because they did not have money enough, and the girl said her father would kill them.

Our statute provides: "Every male who shall have arrived at the full age of seventeen years, and every female who shall have arrived at the age of fourteen years, shall be capable in law of contracting marriage; if under these ages, their marriage is void." Crawford & Moses' Dig., § 7073.

If they had known each other five years, the girl was only thirteen, but if only four years she was only fourteen, and could not have married lawfully before that time. The appellant and prosecuting witness therefore both knew that she was an unmarried girl, and the circumstances and evidence above set out sufficiently support this allegation in the indictment.

"On a trial for the seduction of an unmarried woman, evidence which shows that the woman lived with her father and bore his name, that she had received the addresses of the defendant for more than three years, and that a marriage engagement existed between them when the crime was committed, *held* sufficient to warrant the jury in finding that the woman was unmarried." *State* v. *Waterman,* 75 Kan. 253, 88 Pac. 1074; *State of Iowa* v. *Heatherton,* 60 Iowa 175, 14 N. W. 230; *Morgan Lewis* v. *People,* 37 Mich. 518; *Bailey* v. *State,* 36 Tex. Cr. 540, 38 S. W. 185.

No objections were made to the instruction given by the court, and there is no evidence in the record that the prosecuting witness was under duress at the time she gave her testimony, and this was not made one of the grounds in appellant's motion for new trial.

There is ample evidence to support the verdict, and the judgment of the circuit court is therefore affirmed.