4-4743

Opinion delivered October 18, 1937.

*Miles & Amsler,* for appellant.

*J. Hugh Wharton,* for appellees.

BAKER, J.   This suit was begun by the appellant in
the chancery court of Pulaski county.  Its purpose was
to restrain the Commissioner of Revenues and the sheriff
of Pulaski county from enforcing a distraint warrant in
the hands of the sheriff commanding him to seize and
sell appellant's property.

As plaintiff in the chancery court, Barnsdall Refin-
ing Corporation alleged it was a manufacturer and dealer
in gasoline with some of its refineries located in Okla-
homa, and that it partly supplied its bulk sales plants
and storage plants in Arkansas by hauling its gasoline
from the refinery by tank trucks and storing the same
in central business places to make it available for the
retail trade; that it paid taxes on all shipments from the
refinery to the several points in the state as the ship-
ments were made, and not when the commodity was sold;
and that every month it has furnished the Commissioner
of Revenues with a statement of all gasoline shipped into
the state during the previous month, and paid the tax on
the same; pleads further that much gasoline, after it

has been shipped into the state, is left stored in bulk sales plants for a time; that some shipments are made by railroad; that the capacity for storage in the bulk sales plants varies, the larger ones being in or near the larger centers. Those are capable of holding many thousands of gallons.

One of the particular matters in controversy is that the Commissioner of Revenues has refused to allow one per cent. deduction in gallonage on account of evaporation upon shipments of gasoline made by tank trucks; but does allow one per cent. on account of evaporation losses from shipments made by railroad tank cars. The appellant took credit for the one per cent. evaporation upon shipments made by tank trucks in its last monthly statement preceding the filing of the suit, but the Commissioner of Revenues did not allow this credit, and placed a distraint warrant in the hands of the sheriff in order to collect the amount claimed.

It was, also, alleged by the appellant in this suit that at Helena, Arkansas, it had 1,095 gallons of gasoline upon which it had paid the regular tax, but that this gasoline remained in storage so long that it became defective, and that it was on that account destroyed. The tax of $71.17 had been paid; and there was, also, destroyed by fire, at Kensett, Arkansas, 307 gallons upon which was paid a tax of $19.95; that none of the gasoline making up the 1,402 gallons had been sold or used, and when destroyed was still the property of the appellant. It was the prayer of the appellant that it be given the authority to take credit of these several items totalling $397.60 on its monthly tax return and settlement. Of the foregoing total $306.48 was the amount for which credit was claimed at the rate of one per cent. for loss by evaporation under act No. 146 of the Acts of 1929 on shipments by trucks. The temporary restraining order was issued. Counsel, by stipulation, presented the facts in the case. The stipulation is as follows:

"Stipulation of Counsel

"1. The defendant Earl Wiseman is commissioner of revenues of the state of Arkansas, whose duty it is to

administer the laws of the state of Arkansas pertaining to the collection of taxes on gasoline sold within the state.

"2. The plaintiff, Barnsdall Refining Corporation, is a nonresident corporation, domesticated in the state of Arkansas, and authorized to do business in the state of Arkansas. It is engaged in the manufacture and sale of gasoline from points without the state to points within the state, in wholesale quantities.

"3. Plaintiff's refinery is in the state of Oklahoma, and it manufactures gasoline or motor vehicle fuel and ships the same to its dealers in tank carlots from points in Oklahoma to points in Arkansas.

"That the defendant refuses to allow plaintiff credit on its monthly tax report to defendant's department for evaporation, as provided for under act No. 146 of the Acts of the General Assembly of 1929, the same being approved March 14, 1929, because said shipments are not made by railway. Defendant contends that the act referred to embraces shipments made by rail only, and that it does not cover shipments made by motor trucks.

"4. If plaintiff is entitled to credit for evaporation on its tank car shipments on motor trucks, it is entitled to a credit of $306.48. An itemized statement of said shipments is hereto attached, marked exhibit A for identification and made a part of this stipulation.

"5. That on May 19, 1934, plaintiff destroyed 1,095 gallons of Ethyl gasoline in the city of Helena, Arkansas, upon which it had paid a tax to the state of Arkansas in the sum of $71.17. That no part of said gasoline was ever used on the highways of Arkansas, but, because of defects discovered by plaintiff, said gasoline was destroyed rather than sold to the public. A statement of which is hereto attached, marked exhibit B for identification, and made a part of this stipulation.

"6. That on May 3, 1934, plaintiff's service station at Kensett, Arkansas, burned, in which plaintiff had destroyed 307 gallons of gasoline upon which it had paid the tax, and that plaintiff claims that it is entitled to a credit for the tax in the sum of $19.95, a statement of which is hereto attached, marked exhibit C for the identification, and made a part of this stipulation.

"Exhibit A contains a statement of shipments of gasoline from June, 1935, to March, 1936, by tank trucks, upon which the one per cent., if allowed as a credit, would amount to $306.48.

"Exhibit B is a statement of the gasoline destroyed at Helena.

"Exhibit C is a statement of the gasoline destroyed at Kensett."

The issues were decided against the appellant, and from that decree comes this appeal.

It becomes necessary to state the applicable part of act No. 146 of the Acts of 1929. Section 1 of said act is as follows:

"Any dealer in gasoline or motor vehicle fuel who handles same in tank carlots, and pays the tax on said gasoline or motor vehicle fuel in the state, shall be entitled to take credit on the tax due the state for loss due by evaporation as set forth in § 2 of this act." Section 2 of the same act reads:

"All manufacturers of gasoline or motor vehicle fuel and dealers who handle same in tank carlots, shall be entitled to claim credit on any tax due the state as provided for in § 1 of this act to cover the loss that they have sustained by reason of evaporation of gasoline or motor vehicle fuel on which the tax has previously been paid to the state. Any claim for such evaporation shall be accompanied by an affidavit sworn to on a blank to be furnished by the Commissioner of Revenues by such official as the commissioner of revenues may designate, and the Commissioner of Revenues is instructed and empowered to allow claim for such evaporation losses not to exceed in any case 1 per cent. of the gasoline or motor vehicle fuel handled."

The principal issue presented will be settled by a consideration of the foregoing act. If "in tank carlots," as the expression is set forth in both sections of the act above quoted, means or includes tank trucks, appellant is correct in its first contention. The question is presented to us upon the theory of a reasonable construction in the consideration of the language used, wherein it is urged that loss by evaporation is a loss to the manu-

facturer or dealer to the same extent in shipments by tank trucks as in shipments by railroad tanks, and that it was the purpose of the Legislature, in the passage of act No. 146 of 1929 to permit such manufacturer or dealer to recoup for the actual loss in transportation, and not be required to pay a tax upon that portion of the gasoline which could not be delivered because of the actual loss incurred. It will appear that the revenue department has, since 1929, enforced and interpreted act No. 146 as applying to those shipments only which were made by railroad and not to transportation by truck. The legislature has been in session several times since 1929, and the act has not been amended or changed. The allowance so made on shipments by railroad has not been for an actually determined loss at the point of final destination, but for the arbitrary limit of one per cent. on such shipments without proof of actual loss. Without criticism or suggestion of a proposition of credit for this undetermined loss, this course was probably followed by the Commissioner of Revenues as a matter of expediency and good business, wherein under the rule of the law of averages the state would suffer no appreciable loss, and the shipper or dealer would know at all times the amount of tax due upon each shipment without the consequent expense of gauging or measuring each shipment at the point of destination and reporting the loss as there determined. The last statement inferable from the record, is not made in approval or criticism of the rule followed, but by way of explanation.

The foregoing statement is partly inferable from the facts hereinbefore set out, and we think justified by them. No question is raised about the power of the commissioner and his department to make and enforce reasonable rules and regulations, and this rule is not attacked save and except it is urged that the revenue commissioner is arbitrary in his refusal to allow the credit for the shipments made by tank trucks.

We think there is an essential difference in the "tank carlots" and in shipments made by "tank trucks," though it is urged that small tank car loads will probably contain about 6,000 gallons and tank trucks may

contain 3,000 gallons. Some of the railroad tanks, of course, contain considerably more than 6,000 gallons.

In the aforesaid act No. 146 of the Acts of 1929, wherein the expression "tank carlots" is used, "carlots" is written as one word, preceded by the word "tank." We are presumed to give each one of these words the usual or ordinarily accepted meaning as such meaning was most probably intended by the Legislature. Webster's New International Dictionary, Second Edition, defines "tank car": "Railroads—A railroad car especially constructed for transporting liquor or gases in bulk in nondetachable tanks." It also defines "carlot" as a car load. The words "tank truck" have been in use so long as to have taken on a definite or certain meaning. By the same eminent authority "tank truck" or "tank wagon," is defined as a truck or wagon having a tank for the transportation of liquids as oil, milk or gasoline.

Not only are the above and foregoing definitions set forth by one of the greatest lexicographers, but common usage or everyday application of the terms in controversy accord with the definitions given.

From the foregoing, it appears that there is authority for a distinction between the "tank truck" and the "tank carlot" or "tank carload lot." In one there is an authorization for an exemption of as much as one per cent. for evaporation. There is no authority for such reduction or exemption of one per cent. from tank truck shipments. Only by strained construction, and by an effort on the part of the courts to determine what the Legislature should have done that it did not do could the extension of the exemption authorized by said act 146 be made to apply to tank trucks. We possess no legislative functions and there is no apparent error or failure on the part of the legislative body to express fully and completely the meaning intended. Therefore, there is no room for construction. *Refunding Board of Ark.* v. *Bailey,* 190 Ark. 558, 80 S. W. (2d) 61.

The other question presented arises from the fact that certain gasoline was destroyed after the tax was paid; that inasmuch as the gasoline was not used or sold

for use upon the highways, the manufacturer or dealer should have credit upon new shipments for the amount of tax paid upon the destroyed gasoline.

We do not agree with this contention. There are several reasons why this may not be done. The first is that the Revenue Commissioner is without power or authority in law to allow this credit. To allow it would be tantamount to refunding the tax to the taxpayer. If the taxpayer has the right to recover, the same taxpayer has the right to retain the money. We see no virtue in the proposition that this refunded money will be used to pay the tax on other gasoline.

The foregoing announcements are made with full recognition of the authority and doctrines as set forth in the cases of *Standard Oil Company* v. *Brodie,* 153 Ark. 114, 239 S. W. 753, and in the subsequent case of *Sparling* v. *Refunding Board,* 189 Ark. 189, 71 S. W. (2d) 182, cited and relied upon by appellant. The theory as announced in the two foregoing cases as the basis for the taxation is in no manner criticised or impaired by this discussion of the "tax on gasoline." Such terms are used merely to identify the kind of tax and to indicate amounts or values involved, rather than taxation upon a specific article.

In the Sparling case it was held that the amount of the tax levied applied to each gallon of the motor vehicle fuel sold, and that no substantial right was violated where the quantity of such fuel used for other than highway purposes was negligible.

The quantity of gasoline here involved is by comparison not only negligible, but it was lost after shipment into the state for use on highways and after it had become subject to the tax which was in due time paid.

It is not contended by appellant here that the quantities of gasoline upon which they had paid the tax were shipped into the state for use except as motor vehicle fuel. There is no difference in small quantities unfortunately destroyed, one small bit by a fire and the other by reason of appellant's failure or delay to use or sell, and other larger quantities shipped into the state for same or identical purposes. Taxes as well as costs of labor,

freights, and other expenses of transportation enter into the sale price paid by the retail customer, and no part is recoverable under the conditions stated.

Some insurance company, for premium paid, may make good property lost including these added charges as part of the value thereof. But the revenue department has not insured the tax charge in favor of appellant. By the same token the appellant would not be required to refund the tax to one of its customers who might lose his gasoline by fire.

We do not think appellant has brought itself within any rule exempting it from the enforcement of the taxing power against it upon the shipments of motor vehicle fuel into the state, either by the particular manner of shipment or on account of the fact that some of the motor vehicle fuel was destroyed after delivery. Under the enforceable rules it had already become subject to the tax which it was the duty of the commissioner to collect in the one instance, and in the other, having collected the same, he was not possessed of power to forgive, refund or credit elsewhere or upon other shipments. Those who are entitled to such exemptions must show themselves within the exception to the general rule. *Wiseman* v. *Madison Cadillac Co.*, 191 Ark. 1021, 1029, 88 S. W. (2d) 1007, 103 A. L. R. 1208.

The decree of the chancery court is affirmed.