Lewis *v.* State.

4201                                     148 S. W. 2d 668

Opinion delivered March 17, 1941.

D. S. Heslep and G. D. Walker, for appellant.

Jack Holt, Attorney General, and Jno. P. Streepey, Assistant Attorney General, for appellee.

MEHAFFY, J. The appellant, Percy Lee Lewis, was convicted in the circuit court of Phillips county, of murder in the first degree, and sentenced to death. This appeal is prosecuted to reverse the judgment of the circuit court.

On October 26, 1940, information was filed by the prosecuting attorney of Phillips county charging the appellant with murder in the first degree alleged to have been committed on July 28, 1940, by shooting W. H. Patton with a pistol. The appellant was unable to employ counsel, and counsel were appointed by the court to defend him. On arraignment the appellant pleaded guilty of homicide, and the court ordered the jury impaneled to determine the degree of the offense and fix the punishment. Upon the trial the jury rendered a verdict of guilty of murder in the first degree and fixed the punishment at death by electrocution.

On November 8, 1940, the appellant was sentenced to be put to death by electrocution, and the sentence to be carried out January 3, 1941. The case is here on appeal.

E. P. Hickey, Jr., a deputy sheriff of Phillips county, testified that he assisted in the investigation of the state against the appellant, and arrested the appellant; he arrived at the place where the crime was committed about an hour and a half after the killing; that he had in his possession the bullet that Mr. Patton was killed with; received it from Dr. King, and it has been kept in the office ever since. The bullet was introduced in evidence. After arresting the appellant, the deputy sheriff took him to Wabash to Dr. Parker's office where appellant received first aid treatment; Dr. Parker gave

him a shot to stop his suffering; he was then taken back to Helena and put in jail; after that the appellant made and signed a statement which was made freely and voluntarily and without any threats of violence or promises of reward.

The appellant objected to the following question and answer: "Q. Where did you get the pistol that you used that night? A. I got it out of Mr. Craig's house the time that I went in there."

Appellant objected to this on the ground that the question and answer are for the purpose of showing a prior crime entirely unrelated and unconnected with the crime with which the appellant is charged; that the same is incompetent, irrelevant, and immaterial, and is prejudicial and is intended to inflame the minds of the jury. The objection was overruled, and appellant saved his exceptions.

The state then introduced the statement of appellant taken in the identification office on August 5, 1940, before Edgar Hickey and John Anderson. The statement gave appellant's name and where he lived, and the confession stated that he stayed at home with the baby and let his wife go to town first on Saturday night, July 27th; his wife came home around 9:30 or 10:00 o'clock, and then appellant went up town; he came home around 11:30 and lay down across the bed; he woke up about 4 o'clock and left the house intending to go to Watson's house to get some chickens out of their chicken house; he knew when he left home that he was going there to steal some chickens; he came across the dummy line and hit the mouth of the alley behind Craig's; he saw somebody there by the hospital and went back into the alley; when he was over in the yard he saw the colored nightwatchman in the alley by the servant's house, and appellant ran and got in the hedge fence behind the Watson's; he came out of the alley behind Craig's garage and went toward town; the nightwatchman stopped there on the sidewalk, stayed a while, and then went on up town; as soon as the nightwatchman had left, appellant got out and went over to the hen house again; in about fifteen

minutes he saw someone in the alley throwing the light on Dr. Mattox's house and then on the servant's house; appellant got in the hedge fence again and was going out of the alley there; they came on down the alley and one of them said it sounded like he heard someone in the fence; they threw the light on the fence and just as they did appellant shot twice and ran; appellant was shot and knocked down; he got up and ran through the front of the house, and when he got in front of Mr. Keen's a dog got after him, and there was a white man there who hissed the dog on appellant; appellant crossed the railroad and went up to Ida Wood's house and asked her to take his clothes off, that he was shot, and asked her to get him a doctor. He was then asked where he got the pistol that he used that night, and he answered that he got it out of Mr. Craig's house the time he went in there; after the shooting he threw the pistol away in the Johnson grass just the other side of the railroad north of an old gin; at the time of the shooting he only had two shells. The statement is then made that this statement had been read to appellant and is correct; that he made it of his own free will and accord and without their offering him any reward or promise of immunity for making it, and that they warned him that anything he might say could be used for or against him in court.

After the introduction of the confession, Mr. Hickey testified on cross-examination, that the appellant was shot and he took him to a doctor, and the doctor did not think he was seriously wounded; he then took him to jail and he got worse, and they took him to a hospital.

The court charged the jury at length, and the close of his charge was as follows: "In this case the defendant has plead guilty to the charge of homicide, that is he doesn't plead guilty to the charge as conveyed in the information, which charges him with murder in the first degree, but he has admitted the killing. He is entitled to have every reasonable doubt resolved in his favor, and if there is a reasonable doubt in your minds as to the degree of punishment which should be inflicted, he is entitled to the benefit of that doubt, but as to

the commission of the crime there is no reasonable doubt, because the defendant has admitted by his plea in open court, he has admitted the homicide.''

It appears from the record that the appellant admitted the killing and made no objection to the instructions of the court or to the evidence, except to the one question and answer above set out. His objection was that this question and answer was evidence of another crime, unrelated to the crime for which he was being tried, and was introduced for the purpose of inflaming the minds of the jury.

This court said, in the case of *Ware* v. *State*, 91 Ark. 555, 121 S. W. 927: ''And so, too, it is held that one offense cannot be proved by the evidence of the commission of another offense, unless the two are so connected as to form a part of one transaction. But, as wholly independent acts, the commission of one offense cannot be shown by evidence of the commission of another. And the introduction of such testimony is also inadmissible because it raises another and different issue which would call for the introduction of other testimony upon such issue, and thus would involve the true and specific issue presented to the jury for its determination, whether the defendant was guilty of the specific crime charged in the indictment.'' *Dove* v. *State*, 37 Ark. 261; *Endailg* v. *State*, 39 Ark. 278; *Ackers* v. *State*, 73 Ark. 262, 83 S. W. 909; *Allen* v. *State*, 68 Ark. 577, 60 S. W. 956.

The general rule was again stated in the case of *Williams* v. *State*, 183 Ark. 870, 39 S. W. 2d 295, but there are exceptions and limitations on the general rule, and it is held that the evidence of the commission of other crimes that tend to show the intent or premeditation are admissible for that purpose, but not for the purpose of showing guilt in the instant case.

In the case of *Banks* v. *State*, 187 Ark. 962, 63 S. W. 2d 518, this court said: ''The general rule is that admissions of testimony showing the commission of other crimes having no relation to the crime charged is error, but this general rule has no application to the facts of this case. It is always entirely proper for the state to

show, if it can, motive for the commission of the crime, and the evidence of Mrs. May, in reference to appellant forcing her to have sexual intercourse with him was entirely proper for this purpose. We understand the rule to be that the fact that evidence introduced to prove the motive of the crime for which the accused is on trial points him out as guilty of an independent and totally dissimilar offense is not sufficient grounds upon which to reject the testimony."

The court expressly stated, in admitting the evidence: "I am admitting it on the theory that it goes to the question of premeditation, it goes to the intent and purpose of what he was engaged in at the time he fired the fatal shot. In other words, it goes to the question of whether he was committing a felony at the time he fired the fatal shot."

This evidence was clearly admissible for another reason. The question and answer do not indicate any crime. There is no indication anywhere in the record that he went to Mr. Craig's house for any unlawful purpose, or that he committed any crime there. He got the pistol there, he says, at the time he "went in there," but what he went in for is not indicated anywhere in the record, and so far as the question and answer are concerned, he might have gone to Craig's house for a lawful purpose and the pistol may have been given to him. At any rate, there is nothing in the record that indicated he had committed a crime at Craig's house or that he went there for that purpose.

Appellant cites and relies on § 4257 of Pope's Digest which reads as follows: "In all cases appealed from the circuit courts of this state to the Supreme Court, or prosecuted in the Supreme Court upon writs of error, where the appellant has been convicted in the lower court of a capital offense, all errors of the lower court prejudicial to the rights of the appellant shall be heard and considered by the Supreme Court whether exceptions were saved in the lower court or not; and if the Supreme Court finds that any prejudicial error was committed by the trial court in the trial of any case in which

a conviction of a capital offense resulted, such cause shall be reversed and remanded for a new trial or the judgment modified at the discretion of the court.''

This court said in the case of *Turner* v. *State,* 192 Ark. 937, 96 S. W. 2d 455: ''This section has been construed many times by this court, and, while the appellant does not have to save exceptions, he does have to make objections, and here no objection was made.''

There were no objections made by the appellant except the one to the admission of the evidence above set out.

We have carefully examined the record, and have found no error justifying a reversal or modification of the judgment.

The judgment is affirmed.