McDONALD v. STATE.

4804-5                                    279 S. W. 2d 44

Opinion delivered May 16, 1955.

A. E. Johnson, for appellant.

Tom Gentry, Attorney General, and Thorp Thomas, Asst. Atty. General, for appellee.

J. SEABORN HOLT, J. A jury found appellant guilty of the crime of rape (Ark. Stats. 1947, § 41-3401) and assessed his punishment at a term of life imprisonment in the state penitentiary. From the judgment is this appeal.

Case No. 4805, consolidated with this appeal (Case No. 4804), relates to a motion for a new trial based on alleged newly discovered evidence.

— 1 —

For reversal appellant first questions the sufficiency of the evidence,—Assignment 1—(a), (b), (c). The prosecuting witness is appellant's thirteen-year-old daughter who was in the ninth grade in school. She testified that in early July, 1954, at about 1:30 P. M. her father, ". .. came in and he said he wanted to take us berry picking, and I told him I didn't feel like going because

I kind of thought that was what he was going to do.''
A short time before, appellant in their home got in bed
with the prosecutrix and tried to have intercourse with
her. ''Q. However, he didn't have intercourse with you
on that day? A. No, sir. Q. He didn't force you to have
intercourse with him? A. He tried to, but I jumped out
of the bed, and he told me he would knock my head off
for acting so smart with him about it.'' Continuing her
testimony: ''I went with him and the three little kids
were with us. (Witness begins crying.) And so we got
out there, and he told the little kids we were going to
look for berries. I told him I didn't want to go—I
wanted to stay in the truck, and he made me go with him,
and so I got down, and I had on blue jeans, and he made
me pull them off and he raped me, and we went back to
the truck. He tried to start it and it wouldn't start and
so he made me go back with him again, and when we
came back, it still wouldn't start, and he made me go
back the third time. . . . Q. Each time he carried
you back in the woods, did you take off your clothes?
A. Yes, sir. Q. And you put them back on each time
when he had finished? A. Yes, sir. Q. What is your
feeling toward your father, Miss McDonald? A. Well, I
don't want ever to have to live with him again. Q. Isn't
it true that you strongly dislike your father? A. Yes,
sir . . . And when we got back to the truck, he
pulled the truck and we started home, and we got to a
little store on Highway 67, and he bought the children
some ice cream, and we went on home. Q. Where was
your mother? A. She was there at the house. We tried
to get daddy to let her go with us and he wouldn't do it.
He told her there wasn't any use, it wasn't any of her
business—that she didn't need to go. Q. Did you tell
your mother what occurred? A. No, sir, not then. Q.
When did you tell her? A. That night. He told me if I
told her, it would be too bad for me. He told me I had
better not tell her. . . . Q. Do you know what inter-
course is? A. Yes, sir. Q. Did he have intercourse with
you? A. Yes, sir.'' The prosecutrix was afraid of her
father. She testified as indicated that she resisted his

advances, that he chased her and brought her back and raped her forcibly and without her consent.

Appellant denied his daughter's accusations, or that he had ever tried to have illicit relations with her, however, the jury, which was the sole judge of the testimony and of the weight to be given to it, evidently chose to believe the child's version of what happened. When we give to her testimony and all the evidence in the case its strongest probative force in favor of the State, as we must, we cannot say that it is not substantial and legally sufficient to support the jury's verdict and judgment.

Her testimony standing alone was legally sufficient to convict. It was not necessary that it be corroborated. We held in Bradshaw v. State, 211 Ark. 189, 199 S. W. 2d 747 (Headnote 4): "Since one of the essential elements in the crime of rape is that the act must be committed forcibly and against the will of the prosecutrix, she is not an accomplice and corroboration of her testimony is not necessary." The words "forcibly ravish a female" mean that the act "was done 'against the will' of the female or without her consent, which has the same meaning." State v. Peyton, 93 Ark. 406, 125 S. W. 416, 137 Am. St. Rep. 93.

The lesser offenses of assault with intent to rape, and carnal abuse of a female under the age of 16 years, were properly presented to the jury by the court, but, as indicated, the jury elected to find appellant guilty of the greater offense of rape.

— 2 —

Appellant in Assignment 2 argues that the State erred in offering as a witness appellant's wife knowing that she could not be compelled to testify against her husband (by virtue of §§ 43-2019—20), and that this offer prejudiced the jury against him. We do not agree.

On this issue the record discloses: "Essie Marie McDonald, being called as a witness for the State, and after having first been duly sworn, was seated in the witness chair. By the Court: Let the record show Essie

Marie McDonald, wife of the defendant, is called. Do you have a motion, Mr. Lowe? (Discussion off the record.) By the Court: The Court will hold that Mrs. McDonald is incompetent to testify. By Mr. Lookadoo: I want to make an objection to this later. By the Court: Mrs. McDonald, you may stand aside and go back to the witness room. Gentlemen of the Jury, the witness who is leaving the stand is the wife of the defendant, and the Court has held that a wife cannot testify against her husband except where she has been personally injured; the Supreme Court has held that this does not include children. All right, call your next witness. (Witness is excused.)''

It appears that appellant made no objection to the court's action and he is, therefore, in no position to complain for the first time here. *Lewis* v. *State,* 202 Ark. 6, 148 S. W. 2d 668.

— 3 —

In Assignment 3 appellant contends that he is entitled to a new trial on the grounds of newly discovered evidence. He says: ''That defendant has obtained newly discovered evidence that could not have been presented to the court at the trial on his behalf and in his defense at the original trial.

''One. Because, same is in the nature of medical evidence and was not made available to him or his Attorney at time of trial, nor could not have been found at the time because of concealment.'' Our rule is that one relying on newly discovered evidence for a new trial must show: ''Newly-discovered evidence, material for the party applying, which he could not, with reasonable diligence, have discovered and produced at the trial.'' Ark. Stats. 1947, § 27-1901.

In this connection appellant argues that Dr. H. H. Holt made a physical examination of the prosecutrix after the trial which revealed that her hymen was still intact and that this testimony was concealed from the appellant. To secure a conviction it was not necessary

to prove that the hymen had been broken. " 'The carnal knowledge that is required to constitute rape must be a *res in re,* but to no particular depth,' and the hymen need not be ruptured nor the body torn." *Poe* v. *State,* 95 Ark. 172, 129 S. W. 292. The record shows that the attorneys for appellant at the trial in effect admitted to the trial court during consideration of appellant's motion for a new trial that they knew that a medical examination had been made of the prosecutrix prior to the trial but since it was made about thirty days after the alleged rape, they had concluded it would be of no material value. On this issue the court commented as follows: "The defense attorneys were aware that a medical examination had been made, and they were aware of that fact prior to the day of the trial, and that after consultation with a qualified neurologist, they concluded that the examination of the examining physician would be of no material value, particularly in light of the approximately 30 days which had elapsed between the date of the alleged act and the date of the examination . . . the attorneys for the defendant had unrestricted access to the prosecuting witness, and the mother, Mrs. McDonald, and that they questioned those parties at length." We hold that this proffered medical evidence failed to meet the above statutory requirement for admission. *French* v. *State,* 205 Ark. 386, 168 S. W. 2d 829.

Another doctor, Henry, also testified at the hearing on the motion for a new trial in effect that to have intercourse the hymen must be perforated. His testimony was based on hypothetical questions. He made no physical examination of the prosecutrix and admitted that he had never seen her. There was no proper showing that his testimony could not have been obtained by due diligence prior to the trial.

Three ladies also testified, at the hearing on the motion for new trial, in effect, that about January 27, 1955, about six months after the alleged rape, that they went to appellant's home and in the presence of the prosecutrix had asked her mother whether the appellant had had intercourse with the prosecutrix and that Mrs.

McDonald replied that appellant had tried to but did not succeed, and that her daughter did not know the difference, and that she took her to a doctor.

Appellant argues that the above statements of Mrs. McDonald were admissible for the reason so he says: "The mother can make statements for the daughter in her presence, if the daughter is silent and stands by, and makes no effort to refute them. What were the statements made, that were offered? Those are declarations against interest, as she is an interested party, also the State." As we view the testimony of those ladies its effect would be to discredit and impeach the testimony given by the prosecutrix which the evidence shows she had never recanted. Such testimony is not a ground for a new trial. "A new trial will not be granted for newly-discovered evidence which is merely cumulative of that offered on the trial or which tends to impeach the credibility of the State's witnesses." *Norrid* v. *State,* 188 Ark. 32, 63 S. W. 2d 526, Headnote 4. See also, *Edgeman* v. *State,* 183 Ark. 17, 34 S. W. 2d 753, and *Reeder* v. *State,* 181 Ark. 813, 27 S. W. 2d 989. So we hold that the court was correct in overruling the motion for a new trial on the ground of newly discovered evidence.

Finding no error, the judgment is affirmed.

ROBINSON, J., dissents.

Chief Justice SEAMSTER not participating.

ROBINSON, J., dissenting. I don't suppose that ever before in the entire history of civilized society has a human being been imprisoned for life on such weak and unsatisfactory evidence as that upon which the defendant was convicted in this case.

The thirteen year old daughter's testimony is uncorroborated by substantial evidence or circumstances of any kind. Although corroboration of the testimony of the alleged victim is not necessary in a case of this kind, lack of corroboration should be considered in passing on the motion for a new trial on the ground of newly

discovered evidence. The trial court appointed two lawyers for the defendant, but they took no part in the case subsequent to the trial. The attorney who represents appellant on appeal filed a motion for a new trial alleging, *inter alia,* newly discovered evidence.

At the trial, the prosecutrix testified that her father raped her three times within a period of about 45 minutes. Her younger brothers and sisters were nearby; some Negroes were also close to the scene. There is no evidence that anyone heard an outcry, nor does the prosecutrix testify that she made an outcry. The rape is alleged to have occurred on the first day of July, 1954. Prosecutrix says she told her mother about it that night, yet no charges were filed against the defendant until two months later on August 30, 1954.

The testimony of the prosecutrix is not convincing. She admitted that she dislikes her father and that such feeling existed a long time before the rape is alleged to have occurred. Her testimony that her father "raped" her is a mere conclusion on her part, since no showing is made that she knows the meaning of the word rape. The following is a question asked her and the answer she gave:

("Q. Wanda, I am sorry to have to ask you this, but did he penetrate you with his private organs? That is the question I want to ask you, for the jury to hear. Do you understand what I asked?

"A. No, sir."

It can be seen that two questions were propounded to the witness as one question. Her answer was "no". She could have meant that he did not penetrate her, or she could have meant that she did not understand the question. In the light of the evidence developed on the motion for a new trial on the ground of newly discovered evidence, it would appear that when she said "no", she meant that there was no penetration. As heretofore stated, the attorney who represented the defendant on the motion for a new trial on the ground of newly dis-

covered evidence did not represent him at the trial. This attorney discovered that prior to the trial, the State had the prosecutrix examined but did not produce the examining physician as a witness. This physician was called as a witness on the motion for a new trial, and testified that he examined the prosecutrix on the 4th day of August, almost a month before the defendant was charged with the offense. The doctor stated: "There was no physical evidence that this girl, Wanda Lou McDonald, had ever experienced sexual intercourse as we commonly speak of it." He testified further:

"Q. Doctor, in that examination, did you find the state of the hymen at that time?

"A. Yes, sir.

"Q. What was the state of the hymen?

"A. The hymen was imperforate.

"Q. Imperforate—what does that mean?

"A. It means that it had never been perforated. Its hymenal opening was annularial in shape—that means circular—and less than one c.c. in diameter. One c.c. is one-third of an inch. It would not admit the tip of my little finger."

The doctor also testified that there was no evidence of trauma or disease. On cross-examination, he stated:

"Q. Doctor, isn't it true that this—it's possible you could be mistaken as to whether or not this girl had had intercourse with her father or not, from the examination you made? I just ask you if it is possible that you could be wrong?

"A. I don't see how it could be possible, because on August 4, this child would not admit without severe pain—I caused her some pain in an effort to examine her—and she wouldn't admit anything larger than an ordinary cigarette.

"Q. Than an ordinary cigarette; isn't it true that at different times of the month, there is a difference in the expansion of a girl—a difference in the expansion?

"A. No, there is no change in it; I might add that there is quite a wide variation of the size of the hymenal opening in different individuals."

It was further shown in the hearing on the motion that, subsequent to the arrest of appellant, the mother of the prosecutrix stated in her daughter's presence that the child was not raped but she did not know the difference. The prosecuting witness was standing there when her mother made this statement and did not deny what the mother said.

When one of the attorneys who had represented the defendant at the trial was called as a witness on the motion for a new trial for the purpose of showing whether he knew that the prosecutrix had been examined by a doctor prior to the trial, he refused to testify. The court did not compel him to do so. In any event, a jury passing on the guilt or innocence of the defendant should have had the benefit of the testimony of the doctor who made the physical examination subsequent to the time the rape is alleged to have occurred.

Therefore, I would grant a new trial on the ground of newly discovered evidence.