James HICE *v.* STATE of Arkansas

CR 79-181                                    593 S.W. 2d 169
Supreme Court of Arkansas
Opinion delivered February 11, 1980

*Ralph E. Wilson, Sr.,* for appellant.

*Steve Clark,* Atty. Gen., by: *Catherine Anderson,* Asst. Atty. Gen., for appellee.

GEORGE ROSE SMITH, Justice. The appellant, 20, was convicted of the rape of a 9-year-old girl and was sentenced to serve 50 years' imprisonment. His brief questions only the sufficiency of the evidence.

It is argued that there is no proof of penetration of the labia, as required by our earlier cases. *Gardner* v. *State,* 263 Ark. 739, 569 S.W.2d 74 (1978); *Poe* v. *State,* 95 Ark. 172, 129 S.W. 292 (1910). The child's testimony, which we need not narrate, was sufficient to identify the accused and establish penetration. The examining physician testified that there were signs of irritation, reddening, and tenderness into the inner surfaces of the labia, "to the opening into the vagina at the hymen. There was really no evidence of penetration past the hymen, but certainly within the labia up to as far as the hymen, there was evidence of irritation." The proof is essentially the same as that in the *Poe* case, *supra,* and is sufficient under our earlier cases to support the conviction.

In our discussions of the case, however, the question has been raised that the proof may not be sufficient under the new Criminal Code, in which the definition of rape includes "sexual intercourse" with a person less than 11 years old. Ark. Stat. Ann. § 41-1803 (Repl. 1977). Sexual intercourse in turn is defined as "penetration, however slight, of a vagina by a penis." § 41-1801(9). According to medical textbooks and to dictionaries, the female sexual organs consist of the vulva, comprising the outer and inner labia, and the vagina, which is the canal extending inward to the uterus. The hymen is at the entrance to the vagina. Thus there is a possibility that the legislature, in referring to the slightest penetration of the vagina, meant to change the crime of rape by requiring a deeper penetration into the body than was formerly necessary. We appreciate the force of this argument, which is supported by the medical definition of "vagina" and by the rule of strict construction of penal statutes; but we are firmly convinced that the legislature did not intend any such drastic change in the law.

The basic rule of statutory construction, to which all other interpretative guides are really subordinate, is to give effect to the legislative intention. *Holt* v. *Howard,* 206 Ark. 337, 175 S.W.2d 384 (1943). Penal statutes are not to be so strictly construed as to exclude cases which the words, in their common and ordinary acceptation, would apply to. *St. Louis, I.M. & S. Ry.* v. *Freeman,* 95 Ark. 218, 128 S.W. 1024 (1910). And a literal application of a statute which would lead to absurd consequences should be discarded in favor of a more reasonable interpretation. *Merritt* v. *No Fence Dist. No. 2, Jefferson County,* 205 Ark. 1129, 172 S.W.2d 684 (1943).

We have two basic reasons for our conviction that the suggested change was not envisioned by members of the legislature. First, the consequences would verge on the ridiculous. As far as we know, Arkansas would be the only state in the nation having such a nebulous and impractical definition of rape. The Code definition requires penetration, "however slight," of the vagina. In the case of married women, with the hymen gone, it would often be utterly impossible for the victim to say whether the required depth of penetration had occurred, despite the essential immaterial-

ity of that particular fact. Certainly the Commentary prepared by the draftsmen of the Criminal Code gave no hint whatever to the General Assembly that such a far-reaching change in the law was to come about.

In the second place, the selection of the word "vagina" is perfectly understandable in view of the task confronting the draftsmen of the Code. They were, as they explain in the Commentary to Section 41-1801 (where sexual intercourse is defined), attempting "to foreclose any contention that the offenses defined by this Chapter are vague in scope." But in modernizing the criminal law, the draftsmen said specifically, in the last paragraph of the Commentary to that Section: " 'Sexual intercourse' is defined in a fashion that restates the common law doctrine that any penetration suffices to constitute the act." And the *Poe* case, *supra,* which held that penetration of the labia is sufficient, was cited in support of that statement.

It must be remembered that the Code was designed to update language that had not been touched since the Revised Statutes were adopted in 1838. Only ten years earlier Noah Webster had published, in two big volumes, the first edition of his magnificent dictionary. Even though that dictionary defined 70,000 words, it did not contain such entries as anus, penis, or vagina—all Latin words that had precisely the same spelling in ancient Rome. But such words simply were not used in print. Indeed, Webster perhaps went to the limit of propriety in his distinction between the sexes: "The male sex is usually characterized by muscular strength, boldness and firmness. The female sex is characterized by softness, sensibility and modesty." Nothing more. Webster's Dictionary (1st ed., 1828), Sex.

So with the General Assembly in 1838. Rape, almost in Webster's words, was defined in the Revised Statutes as "the carnal knowledge of a female, forcibly, and against her will." Ark. Stat. Ann. § 41-3401 (Repl. 1964). Sodomy was not even defined, being referred to simply as the crime against nature, which was Webster's entire definition. And as to penetration the statute merely stated: "Proof of actual penetration into the body shall be sufficient to sustain an indictment for a

rape, or for the crime against nature." §§ 41-814 and 41-3402 and Compiler's Notes (Repl. 1964).

However, times change. By the 1970's the draftsmen of the Code preferred to use more forthright language. Sexual intercourse was defined as the penetration of a vagina (no better word comes to mind) by a penis. § 41-1801(9). That distinguishes rape from "deviate sexual activity," which includes the penetration, however slight, of the anus or mouth of one person by the penis of another. § 41-1801(2). Thus the word "vagina" was selected not to change the definition of rape but to add precision to the definitions of rape and of deviate sexual activity, which includes what was formerly known as sodomy. There is no tenable basis for supposing that the suggested far-reaching change in the fundamental conception of the crime of rape ever crossed the minds of those who wrote or enacted the 1975 Criminal Code.

Affirmed.

FOGLEMAN, C.J., and HOLT and STOUD, JJ., concur.

PURTLE and MAYS, JJ., dissent.

JOHN A. FOGLEMAN, Chief Justice, concurring. I can agree that this judgment should and must be affirmed, regardless of the meaning given the word "vagina." Reading the collective legislative mind is sometimes a difficult task and occasionally the answer seems to lie in the mind of the interpreter, who, as human beings are prone to do, sees what he would like to see in the legislative language. The really basic rule of legislative construction is that, when the language of a statute is plain and unambiguous, the words are given their plain, usual and ordinary meaning and there is no resort to rules of construction, the crutches upon which the courts must necessarily lean when language is ambiguous or its meaning uncertain. See *McClure* v. *McClure,* 205 Ark. 1032, 172 S.W.2d 243, where we held that the word "cohabit" in a statute meant sexual intercourse, using the popular, rather than the literal or derivative, meaning of the words. Resort to a standard, often used dictionary, Webster's New Inter-

national Dictionary, 2d. Edition, Unabridged, reveals this definition:

> b. Specif., in female mammals, a canal which leads from the uterus to the external orifice of the genital canal, or to the cloaca.

Webster's Third New International Dictionary has substantially the same definition, but omits "or to the cloaca." According to The American Heritage Dictionary of the English language, vagina means "[t]he passage [leading from the external genital orifice to the uterus in female animals." Genital means "pertaining to or designating the sexual organs." Webster's New International Dictionary, 2d. Edition.

An orifice is a mouthlike aperture, as of a tube, pipe, etc.; an opening; vent. Webster's New International Dictionary, 2d. Edition, Unabridged. External certainly means outward, exterior. Webster's New International Dictionary, 2d. Edition. Thus the vagina terminates at the outside opening or vent of the genital canal or the outside or exterior sexual organ opening.

In construing any statute, in the absence of any indication of a contrary legislative intent, the courts *must* give words their ordinary and usually accepted meaning and interpretation in common language, as distinguished from their technical meaning, where the language is plain and unambiguous. *City of North Little Rock* v. *Montgomery,* 261 Ark. 16, 546 S.W. 2d 154; *Faull* v. *Heath,* 259 Ark. 145, 532 S.W. 2d 164; *Kaiser* v. *Price-Fewell, Inc.,* 235 Ark. 295, 359 S.W. 2d 449, cert. den. 371 U.S. 955, 83 S. Ct. 511, 9 L. Ed. 2d 501; *Terral* v. *Terral,* 212 Ark. 221, 205 S.W. 2d 198; *Call* v. *Wharton,* 204 Ark. 544, 162 S.W. 2d 916; *Barnsdall Refining Corp.* v. *Ford,* 194 Ark. 658, 109 S.W. 2d 151; *Berry* v. *Sale,* 184 Ark. 655, 43 S.W. 2d 225. This principle applies in criminal cases. In *Hancock* v. *State,* 97 Ark. 38, 133 S.W. 181, we said:

> *** We must construe the terms according to their 'usually accepted meaning in common language,' for that is the sense in which they must be supposed to have been used by the Legislature. ***

To me, the most persuasive portion of the Commentary to Ark. Stat. Ann. § 41-1801 (Repl. 1977) is the reference to the statutes of New York and the proposed codes of Michigan and Kentucky. While I think the statement in the Commentary that "sexual intercourse is defined in a fashion that restates the common law doctrine that any penetration suffices to constitute the act" might be consistent with either view of the present statute; because it does not say "penetration of the body," it could be taken to say "penetration" means the same thing it always has, and not that penetration of the body and penetration of the vagina are the same. Any doubt is eliminated, however, when, by reading the full commentary, we see that the draftsmen of Ark. Stat. Ann. § 41-1801 (Repl. 1977) derived their definitions largely from New York Penal Law § 130.00, and referred to the Proposed Michigan, Kentucky and Texas codes. The definitions in the New York statute included this:

> "Sexual intercourse" has its ordinary meaning and occurs upon any penetration, however slight.

In the Practice Commentaries following the cited section of the New York Code in McKinney's Consolidated Laws of New York, Annotated, some of the background history is given. The commentator said:

> This section sets forth and defines eight terms that are used in Article 130. Subdivision one prescribes that the term "sexual intercourse" is to have its ordinary meaning. The statement that it "occurs upon penetration, however slight," derives from the former Penal Law (§ 2011). Thus, "sexual intercourse" may occur without orgasm or complete penetration of the penis into the vagina.

We do not know the language used in the proposed Michigan Code, but the Michigan statute adopted and published as Mich. Stat. Ann. § 28.788 (1), M.C.L.A. Sec. 750.520a (Supp. 1979-80) included the following definition:

> (h) "Sexual penetration" means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other in-

trusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required.

The Kentucky statute, Ky. Rev. Stat. § 510.010 has this definition:

(8) "Sexual intercourse" means sexual intercourse in its ordinary sense but is limited to sexual intercourse between persons not married to each other. Sexual intercourse occurs upon any penetration, however slight; emission is not required. (Enact. Acts 1974, ch. 406, § 81)

The Texas code, Vernon's Tex. Code Ann. § 21-.01 has this definition:

(3) "Sexual intercourse" means any penetration of the female sex organ by the male sex organ.

The references to *McDonald* v. *State,* 225 Ark. 38, 279 S.W.2d 44 and *Poe* v. *State,* 95 Ark. 172, 129 S.W. 292, when considered with the definitions of sexual intercourse the draftsmen used as a guide in defining the term are a clear indication that they did not consider the use of the word vagina to change the meaning of the rape statute in the manner the dissent urges.

But even if the minority's definition of vagina is accepted, I cannot accept the premise that there is no slight penetration of the vagina unless the hymen is ruptured. The examining physician testified that there were signs of irritation and reddening and considerable tenderness into the inner surfaces of the labia, but no evidence of penetration *past* the hymen. He said that there was "slight erythema of the inner labia and introitus, and very tender at· the introitus, hymen intact . . ." There was reddening and tenderness, and signs of irritation at the opening of the vagina. The hymen is a mucous membrane, and as such is flexible. The doctor testified that it would require more force to rupture the hymen of a girl of the victim's age than that of the average adult female. The introitus is the entrance or opening of the

vagina by medical definition. 2 Schmidt's Attorney's Dictionary of Medicine & Word Finder, I-67 (1978). In Webster's New International Dictionary, 2d. Edition, it is defined as "Opening; entrance." The evidence of irritation at the opening of the vagina, using medical definitions, as the doctor probably did, when considered with the testimony of the little girl, is substantial evidence of slight penetration of her vagina, even though the hymen was not ruptured.

I am authorized to state that Mr. Justice Holt and Mr. Justice Stroud join in this opinion.

JOHN I. PURTLE, Justice, dissenting. The majority has obviously decided this case in the manner they feel it ought to be decided in spite of the fact that the law reads quite to the contrary. I do not feel we are authorized to make a decision based upon what we feel the law ought to be when it is clearly stated otherwise. The General Assembly clearly expressed its intent, and I do not feel we are justified in interpreting it in the manner which we believe they ought to have expressed their intent on the subject. I have no reason to think the General Assembly is incapable of expressing its intent in a criminal matter such as we have before us. The statute has been accurately stated in the majority opinion and I have no trouble at all in understanding the words used therein even though Noah Webster did not see fit to use such words in his dictionary in 1828.

It seems the majority decided there was no intent to change the statutes which have been on the books since 1838. If no changes were intended, then why were the statutes rewritten? No doubt, most members of the legislature know the meaning of "penis," "vagina," and "intercourse." These words are not foreign in Arkansas today even though they may have been Latin in origin. I cannot see the consequence of giving these words their ordinary meaning would verge on the ridiculous. Neither do I consider them to be nebulous or impractical.

I understand appellant's argument to be that the evidence produced at the trial did not prove appellant had violated the law relating to rape. Since the law, as it is clearly

expressed, states the penis must penetrate the vagina before a rape has occurred, I think appellant is arguing the evidence does not support a conviction or that the evidence does not support the finding by the jury that his penis entered her vagina. The majority appear to agree with this last statement; however, they go on to state the legislature did not mean what it expressly stated in the statutes. Instead, they say the legislature really meant to say a penis need only penetrate the labia.

A doctor who examined the girl immediately after the incident testified that he found evidence of tenderness into the inner surface of the labia up to the hymen at the opening of the vagina. He found no evidence of penetration past the hymen which was still intact. The doctor stated it was possible that there was penetration into the labia up to the hymen by a penis. He stated:

> I cannot tell the jury that that little girl's vagina had been penetrated. *** I couldn't find that she had had sex.

Appellant was charged with rape pursuant to 1975 Ark. Acts No. 280, Ark. Stat. Ann. § 41-1803 (Repl. 1977), which reads:

> (1) A person commits rape if he engages in sexual intercourse . . . with another person:
>
> (a) . . .
>
> (b) . . .
>
> (c) who is less than eleven (11) years old.
>
> . . .

The statute under which the appellant was charged requires that there must have been sexual intercourse. Sexual intercourse is defined in Ark. Stat. Ann. § 41-1801 (Repl. 1977), as follows:

. . .

(9) "Sexual intercourse" means penetration, however slight, of a vagina by a penis.

There is a great difference in the present statute and the former statute relating to rape. The statutes prior to § 41-1801 and § 41-1803 were Ark. Stat. Ann. §§ 41-3401 and 41-3402 (Repl. 1964), which read:

41-3401: Rape is the carnal knowledge of a female, forcibly, and against her will.

41-3402: Proof of actual penetration into the body, shall be sufficient to sustain an indictment for rape.

Under the former statutes penetration into the body certainly included penetration into the labia because they are part of the body. There is no need to cite any of the voluminous cases which upheld convictions for rape under the former statute because penetration, however slight, into the body, was sufficient to complete the crime of rape. However, that has been changed by the present statute which became effective in 1976. We have not been required to rule upon the particular issue of penetration as it relates to the present statue. Sexual abuse in the first degree is defined in Ark. Stat. Ann. § 41-1808 (Repl. 1977), as follows:

(1) A person commits sexual abuse in the first degree if:

(a) he engages in sexual contact with another person by forcible compulsion; or

(b) . . .

(c) being eighteen (18) years or older, he engages in sexual contact with a person not his spouse who is less than fourteen (14) years old.

. . .

The Commentary following the last mentioned statute contains the following statement:

> This section is intended to proscribe intimate bodily contact under circumstances that would constitute rape or carnal abuse if the participants engaged in sexual intercourse or deviate sexual activity. *** the conduct might, depending on the facts, have been punishable as assault with intent to rape, simple assault, or sodomy.

In the new statute the language is definite. It clearly states there must be a penetration of the vagina by a penis in order to complete the offense of rape. Therefore, we necessarily have to make certain determinations relating to the female genitals before deciding whether a rape has in fact occurred.

The Attorneys' Textbook of Medicine, Third Edition, Gordy-Gray, Chapter 291, deals with the parts of the anatomy involved in this case. The hymen is described as follows:

> The hymen is a thin fold of mucous membrane separating the vulva from the vagina.

> The vagina is the muscular tube lined with mucous membrane and extends from the hymen to the cervix uteri.

The textbook further describes the labia as being exterior to the hymen. Therefore, there can be penetration of the labia without penetration of the vagina. Since the uncontradicted facts in this case show this child's hymen to be still intact and the doctor's statement clearly shows there was only possible penetration of the labia, there can be no rape as defined by Ark. Stat. Ann. § 41-1803.

Criminal attempt is defined in Ark. Stat. Ann. § 41-701 (Repl. 1977), as follows:

> (1) A person attempts to commit an offense if he:

> (a) . . .

> (b) purposely engages in conduct that constitutes a sub-

stantial step in a course of conduct intended to culminate in the commission of an offense whether or not the attendant circumstances are as he believes them to be.

. . .

It is obvious an attempt to commit rape is present in the facts and circumstances in the record before us. This "attempt" statute is clearly a replacement for a former attempted rape statute. Penalty under the present statute for attempted rape is from 3 to 20 years. The penalty for sexual abuse in the first degree is up to 5 years.

Since the legislature used the term "sexual intercourse" in one statute and "sexual contact" in another, I have no reason to believe they did not know the difference. Additionally, the two expressions are defined one immediately following the other in Ark. Stat. Ann. § 41-1801 (Repl. 1977). Also, "deviate sexual activity" is defined in a manner that a first year law student would have no trouble understanding. The legislature certainly went to a lot of trouble and expense needlessly if a change or clarification of the statutes were not intended. Perhaps it is not the legislature that does not understand what the statutes clearly express.

In most cases, the female would be able to state she had been penetrated. In such cases such statement would support a conviction for rape. However, here we have a most unusual case as the uncontradicted evidence shows there was no penetration of the vagina. It is not our duty or responsibility to substitute our opinion for that of the legislature when there is no uncertainty or ambiguity. It is not up to us to change the laws so long as they are constitutional. Whether this law should have been changed is for the legislature to decide, not the courts.

Strict statutory construction of penal statutes is perhaps the most formidable rule of law in existence today. It has existed for over a hundred years without interruption. Penal statutes are to be construed strictly in favor of those upon whom the penalty is to be imposed. In construing penal

provisions, nothing will be taken as intended which is not clearly expressed, and all doubts must be resolved in favor of the accused. *White* v. *State,* 260 Ark. 361, 538 S.W. 2d 550 (1976). We have stated it is a well-settled rule that penal statutes are strictly construed with all doubts resolved in favor of the defendant, and nothing is taken as intended which is not clearly expressed. *State* v. *Scarmardo,* 263 Ark. 396, 565 S.W. 2d 414 (1978).

There has never been any attempt to change the strict construction rule. A rule so long in existence has surely found favor by the courts and the legislature. No doubt the legislature acted with due deliberation when enacting the present statutes. Obviously, it had in mind to create several classes of criminal offenses which it defined rape, sexual abuse in the first degree, criminal attempt, and others. The distinction is not without reason. It is manifestly more appropriate that a man who assaults a female to the extent he inserts his penis into her vagina, perhaps destroying the hymen, should receive a more severe sentence than one who intended to accomplish the same act but failed. No doubt justice requires a different sentence in the two types of offenses. No doubt the legislature had in mind the effect it would have on the victim as well as the offender. The stigma attached to a rape victim is great indeed. No doubt the stigma attached to the victim of sexual abuse, or attempted rape, where there is no rape is less severe. The victim in this case is still a virgin in the sense that her hymen is still intact. Had her vagina been penetrated this would no longer be true. We are not unaware of the fact that displacement of the hymen is often accomplished by means other than by sexual intercourse.

It is obvious from the facts of this record that appellant attempted to rape this little girl but, for reasons not know to us, he did not complete the dastardly act. Whether he was unable to do so or changed his mind about it is not for us to decide. However, we should apply the proper law to the case. Therefore, I would reverse and remand for the purpose of having appellant tried pursuant to the appropriate statute.

I am authorized to state that Mays, J., joins me in this dissent.