## ALLEN *v*. STATE.

Opinion delivered February 2, 1901.

EVIDENCE—COMPETENCY.—In a prosecution for murder in which there was evidence that defendant had been criminally intimate with deceased's wife, and that he shot deceased from his wife's bed, a witness testified that deceased, on an occasion prior to the killing, asked him to go to defendant and request him to let his wife alone, and that defendant, upon being so requested, replied that he would. There was evidence tending to prove an *alibi* for defendant. *Held*, that defendant's reply was inadmissible, as the fact that defendant had previously been intimate with deceased's wife would not tend to show that he killed deceased. (Page 579.)

Appeal from Miller Circuit Court.

JOEL D. CONWAY, Judge.

### STATEMENT BY THE COURT.

At the June term, 1900, of the Miller circuit court, on the 7th day thereof, defendant was indicted for murder in the first degree, and on the 18th day thereof was tried. On said 18th day of June the jury were unable to agree upon a verdict, and on the next day they returned a verdict against the defendant, assessing his punishment at seven years in penitentiary. On 21st June, defendant filed motion in arrest of judgment, which was on same day overruled, and exceptions saved. Afterwards on same day he filed his motion for new trial, which was overruled, and exceptions saved, and he prayed an appeal, and the judgment against him was suspended for sixty days, for him to apply to a judge of the supreme court for appeal and supersedeas, which were granted.

The testimony of Lottie Gayton, deceased's wife, tended to show that on Saturday night, the 31st of March last, defendant was in her room in bed with her; that there was only one opening to the room, a window, which was covered by a spread; that her husband came home, and was attempting to get in the window, and defendant raised up, and shot him once;

37

that no word was spoken by either of them; that deceased ran to Lottie's mother's room, and defendant jumped out of the window, and left. Deceased lived several hours. After the shooting crowds gathered in, and she did not tell any one that night how it happened, and no one asked her. She did not, for the reason that she did not want any one to know about it. That at the examining trial she denied that it was defendant, and did not tell who it was, for the reason that the next morning after the killing General Allen, defendant's brother, threatened her life if she said it was defendant. That on defendant's application for bail before W. T. Hamilton, county judge, she testified, but denied testifying that she had been intimate with so many men previous to this that she could not give the names of all of them, and denied further that she there testified that her father-in-law told her that if she would swear it was defendant he would see that she was not punished.

By the testimony of Viney McCamie and other witnesses subsequent and following her testimony in the transcript, the state introduced testimony tending to show that deceased said that night, after he was shot, that it was defendant who did it; that some of the witnesses followed his tracks away from Lottie's room, and some of them claimed to have seen him that night near deceased's house.

By the testimony of Margaret Ulford and other witnesses following her testimony in the transcript, the defendant introduced testimony tending to prove an *alibi*.

By the testimony of W. T. Hamilton, county judge, the defendant shows that Lottie Gayton testified before him on defendant's *habeas corpus* proceedings for bail, and that she testified that her step-father told her that if she would swear it was defendant that he would see that she would not be punished, and that her past conduct with other men had been so numerous that she could not name all of them, except that she gave the names of two, just previous to this trouble. Defendant also testified that he was not away from his home that night.

Appellant, *pro se.*

It is error for the court to indicate, in instructions to the jury, what weight it attaches to the evidence on any point. 52 Ark. 265; 59 Ark. 417. A subsequent correct instruction did not cure this error in instructing on the defense of *alibi.* 55 Ark. 393. It was error to admit evidence as to appellant's previous conversations with witness as to his intimacy with wife of deceased. 1 Greenleaf, Ev. § 52; Undh. Ev. 17; 43 Ark. 99; 56 Ark. 349.

*Jeff Davis,* attorney general, and *Charles Jacobson,* for appellee.

There was no error in the court's instructions. The evidence complained of was relevant and competent. 25 Ark. 380.

HUGHES, J., (after stating the facts.) Though there are several assignments of error in this case, yet, as the case must be reversed for the error in admitting certain testimony which a majority of the judges think was prejudicial, we do not think it necessary to notice any other.

Over the objection of the defendant, Robert Hawkins, a justice of the peace, was permitted to testify that some three or four months before the trial, John Gayton (the deceased) requested him to go to the defendant, and request him to let his wife alone, and that he told Ossey Allen, from what he had heard he had better let John Gayton and his wife alone. If he did not, there would be trouble between them. On cross-examination, witness stated that when he told Ossey Allen this, Ossey Allen replied that he would. This testimony was inadmissible. The defendant saved proper exceptions to this testimony, and embodied his exceptions in his motion for a new trial, which being overruled he excepted and appealed to this court. In view of the fact that there was testimony which tended to prove an *alibi* for the defendant, this evidence might have prejudiced the jury.

For the error of its admission, the judgment is reversed, and the cause is remanded for a new trial.