## WARE *v.* STATE.

### Opinion delivered October 11, 1909.

1. EVIDENCE—CHARACTER OF ACCUSED.—In a criminal prosecution the State cannot prove the accused's bad character as a circumstance from which to infer his guilt.  (Page 558.)

2. SAME—PROVING ONE CRIME BY ANOTHER.—One offense may not be proved by evidence of another offense, unless the two are so connected as to form a part of one transaction.  (Page 559.)

3. WITNESS—IMPEACHMENT.—Where the defendant in a criminal case introduced evidence of his good character, it was inadmissible for the State to impeach such reputation by proof of specific acts of immorality.  (Page 559.)

4. SAME—CROSS EXAMINATION OF ACCUSED.—A defendant in a criminal case testifying in his own behalf may be cross examined as to specific acts of immorality, but if the State desires to impeach his testimony by other evidence it must go to his general character.  (Page 560.)

5. APPEAL—WHEN INCOMPETENT EVIDENCE PREJUDICIAL.—The admission of incompetent evidence against the accused is prejudicial where there was a conflict in the evidence as to his guilt.  (Page 560.)

Appeal from Calhoun Circuit Court; *George W. Hays,* Judge; reversed.

*C. L. Poole, Thornton & Thornton* and *Davis & Pace,* for appellant.

The testimony of Bell Wood was incompetent, and its admission prejudicial.  She admitted that she had never told any

one prior to the trial who the father of the bastard child was, and that the deceased did not know that appellant was accused of being its father. One who is accused of a crime cannot be convicted thereof by proof that he has committed another crime unless that other crime throws some light upon the motive of the defendant which actuated him in committing the crime with which he is charged, or, in case of an assault, on who was the probable aggressor. 39 Ark. 278; 37 Ark. 261; 71 Ark. 150; 82 Ark. 58; 68 Ark. 577. Bastardy, though a civil action for the benefit of the child and mother, is nevertheless *quasi* criminal. 29 Ark. 62; 45 Ark. 56. The only object in introducing this testimony was to discredit appellant and break down the effect of his testimony. It shed no light upon the motive for the crime for which appellant was being tried, nor as to the probable aggressor.

*Hal L. Norwood,* Attorney General, and *C. A. Cunningham,* Assistant, for appellee.

Bell Wood's testimony was competent and proper to be considered in explanation of the conduct of the appellant toward the deceased, and was not so entirely disconnected with the case on trial as would render it incompetent as proving an independent crime. The verdict shows that the jury attached no weight to her testimony, and, in view of the testimony going to show that he was guilty of a higher grade of homicide than that of which he was convicted, its admission was not prejudicial. 77 Ark. 141; 70 Ark. 610; 76 Ark. 84; 72 Ark. 613; 73 Ark. 315.

FRAUENTHAL, J. The defendant, Mose Ware, was tried in the Calhoun Circuit Court upon an indictment charging him with the crime of murder in the first degree by killing one Craft Wood. He was convicted of voluntary manslaughter, and prosecutes this appeal to obtain a reversal of the judgment upon that conviction.

The evidence on the part of the State tended to prove that the defendant was a colored school teacher, and the deceased, Craft Wood, was a colored preacher, and they lived for a number of years about one mile from each other. Upon the morning of January 22, 1907, the deceased was riding upon a horse along the road by the home of the defendant, and there was shot and

killed. On the same day and very shortly after the killing the defendant voluntarily surrendered to parties in the neighborhood, who took him to the sheriff of the county. To the sheriff the State proved that he made the statement that the deceased had been having wrongful relations with his wife, and that he had written deceased a note to leave, which deceased had refused to do, and that he had shot the deceased. But the sheriff did not claim that the defendant told him all the particulars of the killing. There was no one present at the time of the killing, save the defendant and deceased. The prosecution proved by the wife of the deceased that a short time before the killing the defendant had written to deceased a note asking him to leave and charging him with wrongful relations with defendant's wife; and by several witnesses the prosecution proved that the defendant made the statement that the trouble was all about his wife. There were some other slight circumstances indicating that a breach of the friendly relations between these parties had occurred on this account; and the sole and only motive for the killing which the evidence on the part of the State indicated was the alleged illegal relations of deceased with the wife of defendant. The defendant testified in his own behalf that when the deceased passed along the road at his house a controversy arose between them about the wrongful relations between deceased and defendant's wife and about deceased leaving; that in the controversy the deceased started to draw a pistol from a pocket of his overcoat and had pulled it partially out of the pocket and was attempting to draw it for the purpose of killing him, when the defendant shot the deceased with his shotgun.

Briefly, but sufficiently, the above presents the testimony showing the manner and the cause of the killing as claimed by the prosecution on the one hand and as urged by the defendant on the other. It is not considered necessary to further detail the evidence, because from this it can readily be determined whether the court committed an error in permitting the introduction of the testimony which we will now refer to, and whether such error was so prejudicial as to deprive the defendant of a fair and impartial trial.

In its examination in chief, and before the defendant had introduced any testimony, the State introduced as a witness Bell

Wood, who testified that she was the daughter of the deceased; that a number of months after the killing the defendant gave her ten dollars for the purpose of sending her out of the State; that she was an unmarried woman and the mother of two illegitimate children, and that the defendant was the father of one of these bastard children; that the defendant had thus had illegal relations with her and debauched her. And in the same connection she stated that she had never told the deceased of any such wrongful relation with the defendant; that she had never told any one of it, and no one had ever spoken of it; that her father, the deceased, did not know it, and had never heard of it; and neither by her testimony or by any testimony was any circumstance shown by which it could be found that this alleged relation of the defendant with her was in any way the cause of or connected with this killing.

Let us then see if under the circumstances of this case there was any legal ground for the introduction of this testimony, or in what way it could throw light, if any, on the cause or manner of this killing. It is conceded that the deceased had never heard of this alleged relation, and had never in any way referred to it or in any way connected the defendant with his daughter; and that nothing had ever occurred that caused even a mention of the daughter between deceased and defendant. The sole and only motive for the killing which is advanced by the testimony of the State is the alleged illegal relation between deceased and the wife of defendant; and there is not a tittle of testimony which shows that the alleged relation of defendant with deceased's daughter was the cause or the motive of the killing. This testimony could not throw any light on the question as to who was probably the aggressor, for the reason that it is conceded that deceased knew nothing of the alleged relation, and that therefore no difficulty could have arisen between them from that cause. The sole effect, if not the purpose, of this testimony was to attack the character of the defendant. The question therefore presented is whether this testimony was admissible to prove the bad character of the defendant. The defendant occupies a two-fold relation in this case. He is the defendant; and he was a witness in his own behalf.

It is uniformly held that the prosecution cannot resort to the accused's bad character as a circumstance from which to

infer his guilt. This doctrine is founded upon the wise policy of avoiding the unfair prejudice and unjust condemnation which such evidence might induce in the minds of the jury. If such testimony should be admitted, the defendant might be overwhelmed by prejudice, instead of being tried upon the evidence affirmatively showing his guilt of the specific offense with which he is charged. 1 Greenleaf on Evidence (8th Ed.), § 14 b, § 14 q; Wigmore on Evidence, § 57.

And so, too, it is held that one offense cannot be proved by the evidence of the commission of another offense, unless the two are so connected as to form a part of one transaction. But, as wholly independent acts, the commission of one offense cannot be shown by evidence of the commission of another. And the introduction of such testimony is also inadmissible because it raises another and different issue which would call for the introduction of other testimony upon such issue, and thus would involve the true and specific issue presented to the jury for its determination, whether the defendant was guilty of the specific crime charged in the indictment. *Dove* v. *State*, 37 Ark. 261; *Endaily* v. *State*, 39 Ark. 278; *Ackers* v. *State*, 73 Ark. 262; *Allen* v. *State*, 68 Ark. 577.

But a defendant on trial for a crime of any grade is entitled to offer in his defense evidence as to his good character. Such evidence is permitted as to and should be limited to such character as would show that it would be unlikely that the defendant would commit the crime with which he is charged. 1 Wigmore on Evidence, § 56; 1 Greenleaf on Evidence, § 146; *Kee* v. *State*, 28 Ark. 155; *Edmonds* v. *State*, 34 Ark. 720; *Maclin* v. *State*, 44 Ark. 115. After the defendant has offered testimony of his good character in his own aid, the prosecution may by way of rebuttal offer evidence of his bad character. The object of permitting the prosecution to introduce such evidence is not for the purpose of showing the bad character of the defendant; but it is for the purpose of refuting his claim that he has a good character, and thus to prevent the defendant from imposing a false character upon the jury. But, as is said in the case of *State* v. *Laxton*, 76 N. Car. 216, "this right of reply however is only co-extensive with the privilege of the defendant, and is limited to evidence of general reputation." The prosecution is

not permitted, even on rebuttal, to show specific acts of miscon-
duct. The testimony that is here permissible is similar to that
testimony of general reputation which is allowed in order to
impeach a witness. 1 Greenleaf on Evidence, p. 39; 1 Wigmore
on Evidence, § 56; *Commonwealth* v. *Hardy,* 2 Mass. 317.

The testimony of Bell Wood was therefore not admissible
in order to show the bad character of the defendant.

After the State had introduced this testimony and rested,
the defendant introduced evidence of his good character. And,
even though it should be considered that the testimony of Bell
Wood was only introduced out of regular order in the progress
of the trial, and simply on that account was not objectionable,
nevertheless, it was still inadmissible because it was not limited
to evidence of general reputation, but related solely to an alleged
specific act of immorality.

And for the same reason this testimony was not admissible
for the purpose of impeaching the defendant as a witness in
the case. As a witness in the cause, he could have been cross-
examined; and upon his cross-examination, like any other wit-
ness, he could have been asked as to specific acts for the purpose
of discrediting his testimony as a witness. But as is said by
the Court of Appeals of New York: "It is well settled that, for
the purpose of impairing the credit of a witness by evidence
introduced by the opposite party, such evidence must go to his
general character." *Newcomb* v. *Griswold,* 24 N. Y. 298. As is
said in case of *Hollingsworth* v. *State,* 53 Ark. 387, in such
event "proof of specific acts of immorality is not competent."
1 Greenleaf on Evidence, § 461; Acts 1905, 143. It therefore
follows that this testimony of Bell Wood was incompetent,
and that it was an error to admit its introduction.

But, although it was an error to admit the introduction of this
testimony, it does not necessarily follow that this error was preju-
dicial to the rights of the defendant; and it was not prejudicial if it
did not deprive him of a fair and impartial trial under all the
testimony adduced in the case. In a case where the uncontro-
verted testimony shows that the defendant is guilty of the
degree of crime of which he is convicted, the error in permitting
the introduction of incompetent testimony is not prejudicial
to the rights of the defendant. This is based upon the ground

that, viewing such incompetent testimony in any light, the jury could not have rendered a verdict of acquittal. *Levy* v. *State,* 70 Ark. 610; *Taylor* v. *State,* 72 Ark. 613; *Darden* v. *State,* 73 Ark. 315; *Daniels* v. *State,* 76 Ark. 84; *Clingan* v. *State,* 77 Ark. 141.

But the contrary of this proposition is also true. If the facts are disputed, and if the proof is controverted, then that view of the testimony should be taken which is favorable to the defendant; and if, in such view of the case, the incompetent testimony would have a tendency to disparage this controverting evidence on the part of the defendant, then its admission would be prejudicial. *Whit* v. *State,* 74 Ark. 489.

In this case the defendant was a witness in his own behalf and the sole witness who testified as to the manner and circumstances of the killing. He testified to a state of facts which showed that he acted in his necessary self-defense; and if his testimony is true, he is not guilty of manslaughter. The physical facts proved by the evidence are not sufficient to show conclusively that the testimony of the defendant as to the circumstances of the killing is not true. The evidence proved that some of the shots entered the shoulder of the deceased; that one shot entered his head, somewhat on the side of his head and just back of the ear, and that some shot entered his back. But the deceased was at the time on his horse, and testimony as to the tracks of the horse indicated that the horse plunged and probably wheeled about, so that it is possible that the deceased may have been drawing a pistol in a manner and while in a position to shoot the defendant, and the defendant, acting on such appearances, fired his gun at deceased, and at the instant of doing so the position of deceased changed so that he received the shot in the parts of the body as shown by the evidence. The defendant had the legal right to have the jury pass on his testimony together with the other testimony in the case and these circumstances and to determine the facts. The undisputed testimony, therefore, does not show that the defendant did not act in his necessary self-defense; and therefore it does not appear from the uncontroverted testimony that he was guilty of the crime of which he was convicted. Now, this incompetent testimony was of a nature to discredit the defendant as a witness and to

cover him with a moral turpitude that may have led the jury to accept it as a link in fixing on the defendant a criminality in the commission of this act. The testimony was of such a nature that it was well calculated to arouse in the minds of the jury an unfair prejudice, and thereby not only to cause the jury to discredit his testimony as a witness, but also to condemn him as a man. It is true that the weight of the testimony is to the effect that the deceased had no pistol, and was unarmed, and that the defendant did not kill him in necessary self-defense. But under the law defendant had the right to testify as a witness, and he had the legal right to have that testimony presented to the jury unassailed by any unfair prejudice or by any incompetent testimony discrediting him. What credence the jury might have given to his testimony unaccompanied by this discredit, or to what extent they may have been influenced by testimony tending to show that the defendant had debauched the daughter of the man he was charged with having killed, we cannot say; but unquestionably this testimony had the tendency to affect and influence the jury to the detriment of the cause of the defendant. If it was illegal to admit this testimony, its admission was calculated to deprive the defendant of that absolutely fair trial under the law, to which he was entitled, and this error was prejudicial.

We find no other error in the case.

For the error in admitting the testimony of Bell Wood, the judgment of the Calhoun Circuit Court is reversed; and this cause is remanded for a new trial.