## WILLIAMS *v.* STATE.

Opinion delivered May 18, 1931.

*Geo. W. Emerson* and *Dillon & Robinson,* for appellant.

*Hal L. Norwood,* Attorney General, and *Robert F. Smith,* Assistant, for appellee.

SMITH, J. The undisputed testimony in this case shows that appellant, Virgil Williams, and another man shot Neil McDermott, a policeman, while they were engaged in robbing George Chance, and that nine days

later McDermott died from the effects of this wound. Upon his trial under an indictment charging him with the crime of murder committed in the perpetration of a robbery, appellant was convicted of murder in the first degree and given a sentence of death, and has prosecuted this appeal to reverse the judgment on account of the errors of the trial court in admitting certain incompetent testimony over his objection.

The State was permitted, over appellant's objection, to show that shortly before coming to Little Rock, the scene of the killing of McDermott, appellant had been confined in the penitentiary in Oklahoma, and that he came to Little Rock in a stolen car; that, shortly after reaching Little Rock he had robbed a drug store; he was arrested for this crime, confined in the county jail; that he escaped from the jail, and, in doing so, stole the pistol with which he later killed the officer who attempted to arrest him while robbing Chance.

There is no connection between these various crimes and the killing of McDermott, and the only, and the necessary, effect of this testimony was to show the desperate character of appellant as a confirmed criminal. There was no question as to the purpose for which appellant held up Chance, and that he robbed him, and that while still at the scene of the crime he killed the officer who attempted to arrest him. He was therefore guilty of murder in the first degree. *Clark* v. *State,* 169 Ark. 717, 276 S. W. 849; *Harris* v. *State,* 170 Ark. 1077, 282 S. W. 680; *Washington* v. *State,* 181 Ark. 1016, 28 S. W. (2d) 1055.

It is insisted by the State that, although the admission of the testimony as to the previous criminal conduct of appellant may have been erroneous, as having no relation to the killing of McDermott and not explanatory thereof, the error was not prejudicial, for the reason that the undisputed evidence shows that appellant was guilty of the crime for which he was convicted, and the jury could not, under the law, have returned any verdict except that of guilty as charged in the indictment.

The law is settled, indeed, is declared by the statute, that this court will not reverse except for an error prejudicial to the defendant, § 3014, C. & M. Digest. But it is also settled that evidence improperly admitted must be treated as prejudicial unless there be something to show that it was not. *Brock* v. *State*, 171 Ark. 282, 284 S. W. 10; *Moon* v. *State*, 161 Ark. 234, 255 S. W. 871; *Elder* v. *State*, 69 Ark. 648, 65 S. W. 938, 86 Am. St. Rep. 220.

There appears to be no question but that the admission of the testimony showing the commission of other crimes having no relation to the robbery of Chance and the killing of the officer, and not explanatory thereof, was error. The law upon this subject has been declared in many cases, and is well stated in the case of *Ware* v. *State*, 91 Ark. 555, 121 S. W. 927, where it was said:

"It is uniformly held that the prosecution cannot resort to the accused's bad character as a circumstance from which to infer his guilt. This doctrine is founded upon the wise policy of avoiding the unfair prejudice and unjust condemnation which such evidence might induce in the minds of the jury. If such testimony should be admitted, the defendant might be overwhelmed by prejudice, instead of being tried upon the evidence affirmatively showing his guilt of the specific offense with which he is charged. 1 Greenleaf on Evidence (8th ed.), § 14 b, § 14 q; Wigmore on Evidence, § 57.

"And so, too, it is held that one offense cannot be proved by the evidence of the commission of another offense, unless the two are so connected as to form a part of one transaction. But, as wholly independent acts, the commission of one offense cannot be shown by evidence of the commission of another. And the introduction of such testimony is also inadmissible because it raises another and different issue which would call for the introduction of other testimony upon such issue, and thus would involve the true and specific issue presented to the jury for its determination, whether the defendant was guilty of the specific crime charged in the indictment. *Dove* v. *State*, 37 Ark. 261; *Endaily* v. *State*, 39

Ark. 278; *Ackers v. State,* 73 Ark. 262, [83 S. W. 909]; *Allen v. State,* 68 Ark. 577, [60 S. W. 956.]''

But, inasmuch as the undisputed evidence shows that appellant was guilty of the crime of murder in the first degree, was the error prejudicial? We are constrained to hold that it was.

Under the law a jury which has convicted an accused person of the crime of murder in the first degree may, in its discretion, impose the death penalty or a sentence of imprisonment for life. Both are punishments authorized by law for the commission of the crime of murder in the first degree, and the trial jury has the discretion to impose the one or the other. But, while either life imprisonment or the death sentence may be imposed, the law recognizes that there is a difference in these degrees of punishment and that the first named is less than the latter.

Prior to the enactment of § 3206, C. & M. Digest (act 187, Acts 1915, page 774), authorizing the alternate punishment, bail was not allowed upon an appeal to this court from a judgment convicting an accused of the crime of murder in the first degree. But in the case of *Walker v. State,* 137 Ark. 402, 209 S. W. 86, 3 A. L. R. 968, which arose after the passage of the act of 1915, the appellant was given a life sentence upon a conviction for murder in the first degree, and it was held in that case that he was entitled to bail upon his appeal, for the reason, there stated, that the severest punishment of the law was not imposed and that bail would be granted where the punishment imposed was a life, and not a death, sentence.

The court again recognized that there was a difference in severity between a life and a death sentence in the case of *Davis v. State,* 155 Ark. 245, 244 S. W. 750, where it was said: ''In construing this latter statute'' (§ 3206, Crawford & Moses' Digest) ''in *Walker v. State,* 137 Ark. 402, 209 S. W. 86, the court referred to the jury fixing the punishment in a capital case at life imprisonment as imposing the lesser penalty provided by the stat-

ute.'' This Davis case expressly declares the law to be that, while the technical guilt of murder in the first degree is always the same, the law now imposes a greater or lesser punishment for the commission of that crime.

So, therefore, while the undisputed testimony shows appellant guilty of the crime of murder in the first degree, and the jury could not, under the law, have returned any other verdict, there has been imposed the greater, rather than the lesser, punishment for that crime. Were it the law that one, a certain and no other, punishment might be imposed, we would be justified in holding that no prejudice resulted in the imposition of the death sentence, because we could say that the jury could not, under the law, have returned any verdict except that of guilty and could not have authorized the imposition of any sentence except that of death. But we cannot say this for the reason that the jury might, under the law, have imposed another and the lesser punishment, although they must necessarily have found appellant guilty of murder in the first degree as charged in the indictment. We are therefore unable to say that the admission of the incompetent testimony was not prejudicial, for the reason that a greater sentence was imposed than might otherwise have been imposed, had the incompetent testimony not been admitted.

It does not follow, however, that, because the judgment imposed cannot be permitted to stand, the cause must be reversed for a new trial. The error affected only the degree of punishment which might be imposed, and the practice in such cases was declared by Mr. Justice RIDDICK in the case of Vance v. State, 70 Ark. 272, 68 S. W. 37, where the defendant had been convicted of murder in the first degree and given a death sentence. In that case certain testimony was erroneously excluded which, if admitted, might have had the effect of reducing the degree of the crime and, consequently, the extent of the punishment, and upon these facts it was there said: ''Having reached the conclusion that the error of the

circuit court above referred to was only prejudicial in so far as it may have affected the finding of murder in the first degree, we have now to consider what should be the judgment of this court. In the case of *Simpson* v. *State,* where a conviction of murder in the first degree was reversed because the evidence was not sufficient to support it, Chief Justice COCKRILL, who delivered the opinion of the court, said: 'In this case the jury have found the prisoner guilty of murder; but, having found a degree of murder which the proof does not warrant, the verdict stands for the offense of murder, and fails as to the degree. It is then as though the jury had found him guilty of murder, but failed to assess the punishment.' The court thereupon ordered the prisoner be sentenced for murder in the second degree. Now in that case the evidence was not sufficient to sustain the finding of murder in the first degree, while here the evidence is sufficient, but the conviction as to murder in the first degree must be set aside because of the exclusion of material evidence bearing on that point. It is then within our discretion to reverse the judgment and remand the case for a new trial on the whole case, or, as the exclusion of the evidence referred to could have affected the degree of murder only, we can set aside the judgment for murder in the first degree, and allow the verdict to stand for murder in the second degree. The verdict would then fail as to the degree, but stand as to the offense of murder, and the situation of the case would be the same as if the jury had found the defendant guilty of murder in the second degree, but failed to assess the punishment, and we would remand the case with an order to sentence the defendant for murder in the second degree. *Simpson* v. *State,* 56 Ark. 19, [19 S. W. 99] ; *Routt* v. *State,* 61 Ark. 594, [34 S. W. 262] ; *Ballew* v. *U. S.,* 160 U. S. 187, [16 S. Ct. 263]."

In that case the judgment was reversed and the cause was remanded, with directions to the circuit court to sentence the defendant for murder in the second degree.

But in the case of *Simpson* v. *State*, 56 Ark. 5, 19 S. W. 99, the court recognized the right of the State to elect whether the judgment shall be reversed or modified, and that practice was approved in the case of *Warren* v. *State*, 88 Ark. 322, 114 S. W. 705, where it was ordered that the judgment should be modified unless the Attorney General should, within fifteen days, ask that it be remanded. See also, *Noble* v. *State*, 75 Ark. 250, 87 S. W. 120; *Harris* v. *State*, 119 Ark. 94, 177 S. W. 421.

But, unless the request is made by the Attorney General for the reversal of the judgment, rather than have it modified, we may cure the error by the modification of the judgment. In the case of *Crowe* v. *State*, 178 Ark. 1121, 13 S. W. (2d) 606, the appellant had been convicted of murder in the first degree, but the trial court had committed the error of not advising the jury that they had the discretion to impose a life sentence, and we cured this error by modifying the judgment ourselves without remanding the cause for that purpose. We there said: "The court did not instruct the jury as to its right to render a verdict of life imprisonment in the State Penitentiary, at hard labor, in accordance with the provisions of § 3206 of Crawford & Moses' Digest. Under this section of the statute the jury had the right to fix the punishment of the defendant at life imprisonment at hard labor in the penitentiary. This was the lesser penalty provided by the statute, and the court erred in not so instructing the jury. There is no other error, however, in the record; and the error in this respect can be cured by modifying the judgment of the lower court by reducing the punishment from the death penalty to life imprisonment in the State Penitentiary at hard labor. This is accordingly done."

Unless, therefore, the Attorney General shall, within fifteen days, elect to request that the cause be remanded for a new trial, the judgment of this court will be that the sentence of death be reduced to that of imprisonment for life, and it is so ordered.

HUMPHREYS, MEHAFFY and McHANEY, JJ., dissent.