Higgins *v.* State.

5034                                    357 S. W. 2d 499

Opinion delivered May 28, 1962.

*Jeff Duty,* for appellant.

*J. Frank Holt,* Attorney General, by *Milas H. Hale,* Asst. Attorney General, for appellee.

Carleton Harris, Chief Justice. Appellant, Lawrence John Higgins, was charged by Information with the crimes of burglary and grand larceny, the Information alleging that appellant burglarized the Western Auto Store in Bentonville, Arkansas. The Information also charged Higgins with being an habitual criminal,

alleging that he had previously been convicted of three separate felonies and had served a sentence in a penitentiary on each of said convictions. On trial, the jury returned the following verdict:

"We the Jury find the defendant, Lawrence John Higgins, guilty of Burglary and fix his punishment at 15 years consecutively in State Penitentiary.

We the Jury find Lawrence John Higgins guilty of Grand Larceny and fix his punishment at 15 years consecutively in State Penitentiary."

From the judgment entered in conformity with this verdict, appellant brings this appeal.

For reversal, it is first asserted that the court erred in permitting introduction of State's exhibit No. 8. This exhibit, which was admitted over the objections and exceptions of appellant, is a copy of the criminal record of Lawrence Higgins, and includes all of the arrests and convictions of appellant from the year 1935 to the present time. In admitting the exhibit, the court did not permit the jury to look at the record itself (apparently because it showed the number of arrests, as well as the number of convictions), but did permit the prosecuting attorney to read into evidence those portions relating to appellant's convictions. The admitted portion reads as follows:

"UNITED STATES (SEAL)[1] OF AMERICA FEDERAL BUREAU OF INVESTIGATION

July 7, 1961

In accordance with Title 28, Section 1733, U. S. Code, I hereby certify that the annexed paper is a true copy of the original record and fingerprints in the Identification Division of this Bureau, of LAWRENCE HIGGINS (ALSO KNOWN AS LAWRENCE JOHN HIGGINS) FBI number 1 146 464.

---

[1] This seal reads: "Department of Justice" (at top)—"Federal Bureau of Investigation" (at bottom).

In Witness Whereof, I have hereunto set my hand and caused the seal of the Federal Bureau of Investigation to be affixed, on the day and year first above written.

/s/ A. K. Bowles

A. K. Bowles

Inspector

Identification Division

Contributor of fingerprints: State Reformatory, Monroe, Washington; Name and number, Lawrence John Higgins, No. 9810; Arrested or received, October 10, 1936; Charge, grand larceny; Disposition, not more than 15 years; 5 years board action. June 21, 1944, final discharge from parole.

Contributor of fingerprints, United States Marshal, Abilene, Texas; Name and number, Larry J. Higgins, No. 1497; Arrested or received, January 30, 1956; Charge, Dyer Act; Disposition, March 22, 1956, 2 years.

Contributor of fingerprints, United States Penitentiary, Leavenworth, Kansas; Name and number, Lawrence John Higgins, No. 75012; Arrested or received, November 12, 1957; Charge, Motor Vehicle Theft Act; Disposition, 3 years, December 30, 1959, mandatory release."

The authority for offering this evidence is contained in Section 43-2330 (1961 Supp.), and reads as follows:

"The duly certified copy of the record of a former conviction and judgment of any court of record for imprisonment in the penitentiary against the person indicated or the certificate of the warden or other chief officer of any penitentiary of this State or any other State in the United States, or the Federal Government or of any foreign country, or of the chief custodian of the records of the United States Department of Justice, containing the name and the fingerprints of the person imprisoned as they appear in the records of his office

shall be *prima facie* evidence on the trial of any person for a second and subsequent offense, of the conviction and judgment of imprisonment in the penitentiary and may be used in evidence against such person.''

This section is a part of the ''Habitual Criminal Act'' (Act 228 of 1953, as amended in 1961), which provides a greater penalty for those defendants who have been previously convicted of felonies.[2] Appellant contends that the court erred in admitting this exhibit, since it is not signed by anyone claiming the title of ''Chief Custodian of the Records of the United States Department of Justice'', but rather, the signer is only identified as an ''Inspector, Identification Division''. We think there is merit in this contention.

Since the statute authorizing a more severe punishment for one who has been previously convicted, is highly penal, it must be strictly construed. *U. S. V. Lindquist, et al*, 285 F. 447; *State* v. *Bailey* (La.), 115 S. 613. There is here no showing that A. K. Bowles, Inspector, Identification Division, is the chief custodian of the records of the United States Department of Justice. In *Mullican* v. *United States*, 252 F. 2d 398 (U. S. Court of Appeals, 5th Circuit), it was urged by the appellant that certain exhibits offered by the Government consti-

---

[2] ''§ 43-2328. Second or Subsequent Convictions—Sentence.—Any person convicted of any offense punishable by imprisonment in the Penitentiary, who has been discharged, either upon compliance with the sentence or upon pardon or parole, and shall subsequently be convicted of any offense committed after such discharge, pardon or parole, shall be punished as follows:

(1) If the second offense is such that, upon a first conviction, the offender could be punished by imprisonment for a term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one (1) year more than the minimum sentence provided by law for a first conviction.

(2) If the third offense is such that, upon a first conviction the offender could be punished by imprisonment for a term less than his natural life, then the person shall be sentenced to imprisonment for a determinate term not less than two (2) years more than the minimum sentence provided by law for a first conviction.

(3) If the fourth or subsequent offense is such that, upon a first conviction, the offender could be punished by imprisonment for a term not less than his natural life, then the person shall be sentenced to imprisonment for the fourth or subsequent offense for a determinate term not less than three (3) years more than the minimum sentence provided by law for a first conviction.''

tuted error requiring a reversal. The Court quoted from the Federal Rules as follows:

"An official record or an entry therein, when admissible for any purpose, may be evidenced by an official publication thereof or by a copy attested by the officer having the legal custody of the record, or by his deputy, and accompanied with a certificate that such officer has the custody. *   *   *"

Relative to one of the exhibits, the Court then said:

"Government Exhibit 4 consisted of photostatic copies of a Certificate of Parole issued to Mullican in December, 1954, at which time he was an inmate of Texarkana, an Order of Revocation of the Parole, a Warrant for his return to Texarkana, and a Marshal's return showing the delivery pursuant to the Warrant of Mullican to Texarkana on May 18, 1956. These were certified as being exact copies of official documents issued by the United States Board of Parole. The certificate was signed by the Chairman of the Board of Parole, and in this form:

'District of Columbia, Washington, D. C., ss.

I, Scovel Richardson, Chairman, United States Board of Parole, hereby certify that the three attached instruments are exact copies of official documents issued by the United States Board of Parole, in the case of Lloyd Ray Mullican—8786—TT.

The documents are as listed below:

Parole Certificate

Warrant

Order of Revocation

Witness my hand and seal this 1st day of March, 1957.

[Signed]  Scovel Richardson

Chairman

[Seal]

I hereby certify that this document was signed in my presence this 1st day of March, 1957, and that I have custody of the seal of the United States Board of Parole, which is affixed hereto.

> [Signed] James C. Neagles
>
> Acting Parole Executive'

This certificate, in addition to having some of the infirmities inherent in Exhibit 3, is also defective in not containing any recital saying that the officer making the certificate has the custody of the records. We conclude that the court erred in admitting Government Exhibit 4.'' We might here point out that we do not think it was the intent of the Legislature in passing Act 228 of 1953 (§ 43-2330, 1961 Supp.), to permit the introduction of a certified copy of the records of the United States Department of Justice, even though properly certified by the Chief Custodian of the Records, in instances where the prisoner's sentence was served in a state prison. Rather, we are of the opinion that the language of that section requires the certificate of the warden or the chief officer of the state penitentiary wherein the accused had previously served time. The records of the United States Department of Justice, properly certified, could appropriately be offered where the accused had served time in a federal prison or reformatory. When a man is arrested and charged with crime in this state, under the usual procedure, he is fingerprinted, and a copy of the prints sent to the Department of Justice in Washington. That department then sends back to the arresting officers a copy of the defendant's record, if any, which shows both previous arrests and convictions. If the prosecuting officials of that county desire to charge the defendant with being an habitual criminal, and to invoke the penalties of the Habitual Criminal Act, it is only necessary that they write the warden or other chief officer of the institution where he served time, and request a certificate that the defendant served a sentence in that prison (giving dates and charge convicted of, along with copy of fingerprints). Of course, the record is hearsay evidence (made

admissible by the Legislative Act), but under this proce-dure, it is, at least, hearsay "at first hand", whereas, when a certified copy of a record is obtained from the Department of Justice, it is hearsay "once removed", since the department acquired its information from the state authorities.[2] We think, unquestionably, that the introduction of a prior record carries great weight with a jury, and the statute permitting this type of evidence should be strictly complied with.[3]

Appellant also complains that the exhibit is objec-tionable in that Higgins and the person named in the record were not identified by the State as one and the same person. Courts of various jurisdictions are not in agreement upon the sufficiency of proof to establish the identity of a defendant. As stated in 11 A. L. R. 2d, p. 884 and p. 887:

"It would seem that there are two distinct lines of authority in regard to the effect to be given to identity of name as evidence of identity of person in such case. One line of authorities holds that identity of name of the defendant and the person previously convicted is prima facie evidence of identity of person, and, in the absence

---

[2] Where a defendant admits in open court his prior convictions, the certificates are not necessary.

[3] Actually, because of the fact that this evidence does carry great weight with the jury, and may even subconsciously influence the minds of the jurors in determining the defendant's guilt or innocence of the crime with which he is immediately charged, a few states follow the procedure of first determining the guilt of a defendant on the present charge before admitting evidence of prior convictions. The procedure is set forth in the case of *State* v. *King* (Nash.), 140 P. 2d 283, as fol-lows: "Where a defendant has been convicted of a crime, consequent upon which an habitual criminal proceeding is instituted against him, sentence upon the substantive offense upon which he has been convicted shall await the outcome of the habitual criminal proceeding, and if the latter be substantiated, then, and not until then, shall sentence be im-posed upon the defendant for the commission of the substantive crime, with an increased penalty exacted because of the adjudication of defendant's habitual criminal status." This procedure is predicated upon a statute (since repealed), but the procedure is still maintained. See *State* v. *Huneke*, 249 P. 784; *State* v. *Kirkpatrick*, 43 P. 2d 44. Connecticut likewise follows a similar procedure, as set out in Section 340 of the Connecticut Practice Book. See *Armstrong* v. *Potter*, 125 A. 2d 389. While we approve this practice, we feel that such procedure should properly be required by the Legislature, rather than by this Court.

of rebutting testimony, supports a finding of such
identity.

\* \* \* \*

. . . some courts hold that, to warrant the appli-
cation of a statute authorizing additional punishment of
one convicted of crime upon proof of former conviction,
the identity of the accused and the one against whom the
former judgments were entered must be established by
affirmative evidence, mere proof of identity of names not
being sufficient.''

In fact, it would appear that the authorities are rather
equally divided. We prefer the former view, feeling that
the certified copy of record is proper *prima facie* evi-
dence. Of course, there is nothing to prevent a defendant
from tendering proof to the effect that he is not the pre-
son referred to in the record. Actually, we have already
upheld the admission of such evidence, without additional
identification, in previous cases. See *Rowe* v. *State*, 224
Ark. 671, 275 S. W. 2d 887.

Appellant next questions the sufficiency of the evi-
dence to sustain the conviction. While the evidence was
not overly strong, we think, when viewed in the light
most favorable to the State, which we must do on appeal,
it was sufficient. For that matter, on a second trial, it
may well be that the evidence will be more fully devel-
oped. The proof reflected that some guns were stolen
from the Western Auto Store at Bentonville, Arkansas.
Higgins, Bill Linehan, alias O'Banyan, and a man named
Smith, were registered together at a Eureka Springs
hotel. Sheriff Dwan Treat of Carroll County arrested
appellant, because of circumstances that appeared suspi-
cious to him, and took Higgins to his (the sheriff's)
office. Earl Rife, criminal investigator for the Arkansas
Police, testified that appellant told him that he had some
guns in the trunk of his car. Appellant points out that
neither Mr. Rife, nor the sheriff, who also testified, stated
that Higgins admitted that the guns referred to were the
same guns that had been stolen. The sheriff then arrested
O'Banyan, who, at the trial, testified that he and Higgins

broke into the building and stole three shotguns, shotgun shells, and a radio. These items were recovered by the sheriff near Lake Eureka, after O'Banyan took him to the place where they were hidden. Clayton Morrow, a justice of the peace of Carroll County, stated that he heard Higgins and O'Banyan talking in the sheriff's office, and Higgins asked O'Banyan what he (O'Banyan) "did with the guns." The latter replied that he "hid them over in the woods." Mr. Morrow could not testify that the men were talking about the particular guns stolen from Western Auto, though O'Banyan testified that the guns were the same. We think it plausible, considering the two men had just been arrested for stealing the guns from the Western Auto Store, that the conversation related to those particular items.

The jury, in fixing the punishment, found that the sentences should be served consecutively. We take this occasion to point out that this finding can only be considered advisory, much in the same nature as when a jury recommends a suspended sentence, inasmuch as the question of whether sentences shall be served concurrently or consecutively lies solely within the province of the court. See § 43-2312, Ark. Stats. Anno.

Because of the error in admitting the exhibit as herein set out, the judgment is reversed, and the cause remanded.