MILLER *v.* STATE.

5126                                     394 S. W. 2d 601

Opinion delivered October 18, 1965.

*W. B. Howard, Jack Segars* and *John C. Watkins,* for appellant.

*Bruce Bennett,* Atty. General, By: *Russell J. Wools,* Asst. Atty. General, for appellee.

SAM ROBINSON, Associate Justice. The appellants were charged by felony information with the crime of grand larceny. Later, the information was amended by making the additional charge that appellant Jesse Miller had previously been convicted of the crime of burglary, and the additional charge that Leland Miller had previously been convicted of the crime of arson. A prior conviction increases the minimum penalty for the crime for which the defendant is then on trial. Ark. Stat. Ann. § 43-2328 (Repl. 1964).

At the beginning of the trial, defendants entered pleas of guilty, out of hearing of the jury, to that part of the information charging previous convictions, and pleaded not guilty to the principal offense charged. Counsel for defendants then filed a motion asking the trial court to instruct the prosecuting attorney not to read to the jury that part of the information charging

previous convictions, and not to mention the previous offenses in the presence of the jury. Defendants' counsel stated that the defendants would not testify in the case. The motion was overruled; the prosecuting attorney called the jury's attention to that part of the information charging previous convictions, and to the fact that appellants had pleaded guilty to that part of the information. The pleas of guilty to the charge of previous convictions were also mentioned by the court in the instructions to the jury.

The specific question before the court at this time is whether the action of the trial court in permitting the previous convictions to be called to the attention of the jury deprived defendants of a fair trial within the meaning of the U. S. Constitution, Amendments 5, 6, and 14.

The court said in *Lane* v. *Warden, Maryland Penitentiary,* 320 F. 2d 179 (1963): "It is a rule not now subject to challenge that constitutional due process of law requires a fair hearing in a fair tribunal. Although the Constitution does not demand the use of jury trials in a state's criminal procedure, where a jury trial is provided it must be a fair trial." Citing, *Irvin* v. *Dowd,* 366 U. S. 717, *Fay* v. *New York,* 332 U. S. 261, *Palko* v. *Connecticut,* 302 U. S. 319, *Hughes* v. *Heinze,* 268 F. 2d 864, *Baker* v. *Hudspeth,* 129 F. 2d 799. The court said in *Baker* v. *Hudspeth,* supra;

"The denial of a fair and impartial trial, as guaranteed by the 6th Amendment to the Constitution, is also a denial of due process, demanded by the 5th and 14th Amendments, and the failure to strictly observe these constitutional safeguards renders a trial and conviction for a criminal offense illegal and void and redress therefor is within the ambit of habeas corpus." Citing many U. S. Supreme Court cases.

The court said in *Michelson* v. *U. S.,* 335 U. S. 469: "Courts that follow the common-law tradition almost unanimously have come to disallow resort by the prosecution to any kind of evidence of a defendant's evil character to establish a probability of his guilt. Not that the law invests the defendant with a presumption of good

character, *Greer* v. *United States,* 245 U. S. 559, but it simply closes the whole matter of character, disposition and reputation on the prosecution's case-in-chief. The state may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime. The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge. The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair suprise and undue prejudice.''

Many times we have held that evidence of other crimes committed by a defendant is not admissible to prove his guilt of the crime for which he is then on trial. *Williams* v. *State,* 183 Ark. 870, 39 S. W. 2d 295; *Ware* v. *State,* 91 Ark. 555, 121 S. W. 927; *Alford* v. *State,* 223 Ark. 330, 266 S. W. 2d 804.

In the case at bar, previous convictions of crimes were charged in the information. The burden was on the state to prove previous convictions as charged. It can be argued that it was necessary for the jury to know about the previous convictions in order to fix the punishment as provided by statute where previous convictions are alleged in the indictment. It will be recalled, however, that the defendants had pleaded guilty to that part of the information charging previous convictions.

We have heretofore dealt with the question to some extent. In *Rowe* v. *State,* 224 Ark. 671, 275 S. W. 2d 887 (1955), it is pointed out that the information charged a previous conviction, and evidence was, therefore, admissible to prove the charge. The case is distinguishable from the case at bar because in the Rowe case there was no plea of guilty to the previous conviction; in the case at bar there was such a plea.

In *Clubb* v. *State*, 230 Ark. 688, 326 S. W. 2d 816, (1959), the defendant filed a motion to strike from the information the charge of a previous conviction. The motion was overruled. In affirming the trial court it was held there was no error in giving the state an opportunity to prove the charges.

*Higgins* v. *State*, 235 Ark. 153, 357 S. W. 2d 499 (1962) was reversed because the state was allowed to introduce *inadmissible* evidence in an effort to prove a previous conviction charged in the information. In that case we indicated disapproval of a procedure whereby the question of whether a defendant had been convicted previously would be determined by a jury at the same time the defendant's guilt or innocence of the current offense charged was under consideration. But we also said we thought a change in procedure should be adopted by the Legislature, and not by this court. The constitutional aspect of the matter was not discussed.

The Higgins case was decided prior to *Lane* v. *Warden, Maryland Penitentiary,* 320 F. 2d 179 (1963). In the State of Maryland, the procedure for proving a previous conviction was similar to the practice heretofore prevailing in Arkansas. The previous conviction was proved during the trial of the current offense for which the defendant was then accused. In *Lane* v. *State,* 226 Md. 81, 172 A. 2d 400, in the trial on the merits, the defendant, before the commencement of the trial, demurred to that part of the indictment charging a previous offense. The demurrer was overruled, and the action of the trial court in that regard was affirmed by the Supreme Court of Maryland. Certiorari was denied by the Supreme Court of the United States. 82 Sup. Ct. 611. Later, Lane filed in the U. S. District Court for the District of Maryland, a petition for a writ of habeas corpus alleging that by introducing evidence of a previous conviction the State of Maryland had denied him a fair trial on the principal charge on which he was tried. The petition was denied, and Lane appealed to the U. S. Court of Appeals, 4th Circuit. The Court of Appeals held that in trying the charge of a previous conviction along with the primary charge against Lane he was

denied a fair trial within the meaning of the 5th, 6th and 14th Amendments to the Constitution.

The state's position was much stronger in the Lane case than is the state's position in the case at bar. In the Lane case there was no plea of guilty to the charge of having been convicted of a previous offense, whereas in the case at bar there was such a plea, and here it was, therefore, unnecessary for the state to prove the charge. In *Lane* v. *Warden, Maryland Penitentiary,* supra, the court said: "We reach the conclusion that under the facts of this case the reading to the jury, at the commencement of Lane's trial, of that portion of the indictments relating to his prior convictions destroyed the impartiality of the jury and denied him due process of law."

In the case at bar, the state has cited *Breen* v. *Beto,* 341 F. 2d 96 (1951) as holding to the contrary of Lane. True, the Court of Appeals, 5th Circuit, did refuse to follow Lane decided by the 4th Circuit, but in the Breen case the court quoted from *Crocker* v. *State of Texas,* 385 S. W. 2d 392, as follows:

"Though the jury in this State assesses all punishment, except in those cases where the punishment is fixed by law, this Court has in the Salinas, Pitcock and McDonald cases, supra, approved the practice of permitting the accused to stipulate as to the prior convictions and thereby relieve the State of the necessity of reading to the jury that portion of the indictment which charges them and adducing proof before the jury of such prior convictions." *Salinas* v. *State,* 365 S. W. 2d 362; *Pitcock* v. *State,* 367 S. W. 2d 864; *McDonald* v. *State,* 385 S. W. 2d 253.

As heretofore pointed out, prior to the Lane case, in our own case of *Higgins* v. *State,* 235 Ark. 153, 357 S. W. 2d 499, we had expressed the feeling that it was not fair to introduce evidence of previous convictions during the trial for the primary crime then charged. We felt, however, that the change in procedure was a matter that addressed itself to the Legislature. But in the Lane case, the Federal Court has said that such procedure is uncon-

stitutional. We will follow that decision. It follows, therefore, that the trial courts can no longer follow the procedure in that respect which has heretofore been practiced, and it is now the duty of this court to outline an acceptable procedure to follow where a defendant is charged with a previous conviction:

That part of the indictment or information charging a previous conviction should not be read to the jury during the trial of the principal offense charged. If the defendant pleads guilty to the previous conviction charged, as was done in the case at bar, the matter can be handled by the court in charging the jury. The jury can be told that the minimum penalty is the minimum allowed when the previous conviction statute is taken into consideration. In other words, if the minimum penalty for the current offense charged is one year in the penitentiary and the defendant has pleaded guilty to one previous conviction, the court can tell the jury that in the event they find the defendant guilty they shall fix his punishment at not less than two years in the penitentiary, and not more than the maximum specifically provided by the statute for the principal crime charged.

If the defendant pleads not guilty to both the principal offense and the charge of a previous conviction, the question of guilt or innocence of the principal offense can first be submitted to the jury, the jury being informed as to the penalty for a first offense. If there is a verdict of guilty and the punishment fixed is a term in the penitentiary equal to, or exceeding the minimum allowed under the previous conviction statute, the matter is ended. There is nothing else to do insofar as the trial of the defendant is concerned.

If, on the other hand, there is a verdict of guilty and the minimum punishment assessed by the jury is less than that provided by the previous conviction statute, the defendant's guilt or innocence of the previous conviction charge can be submitted to the jury, and if there is a verdict of guilty on that charge, the punishment assessed by the jury on the principal offense can be increased to comply with the minimum provided by the previous conviction statute.

Of course, if there is a verdict of not guilty of a previous conviction, the punishment remains as fixed by the jury in the first instance. In the event the punishment is left to the court in the first instance, there would be no trouble at arriving at the punishment.

During the course of the trial in the case at bar, the court having recessed on Thursday until the following Monday, a local newspaper published a statement purported to have been made by the trial court criticizing jurors serving at that term of court for assessing minimum prison sentences. We believe it would be a good practice for all courts to refrain from making any statement, other than a judicial ruling, that might have a tendency to influence a jury in arriving at a verdict in a pending case.

The defendants did not testify in this case. Over their objections and exceptions, the court instructed the jury that it was the privilege of the defendants to testify in their own behalf or to decline to so testify. In his argument to the jury, the prosecuting attorney specifically called this instruction to the attention of the jury, repeated it, and said: "You are instructed this is a privilege to them to either testify or not to testify. That is what the court says in that instruction." Obviously, by arguing this instruction to the jury in that manner, attention was called to the fact that defendants had not taken the stand in their own behalf. This was error.

This court said in *Evans & Foust* v. *State,* 221 Ark. 793, 255 S. W. 2d 967: "Our law wisely provides that failure of a defendant to testify shall not create any presumption against him. The prosecuting attorney should carefully refrain from using any words or gestures which would be calculated to call a jury's attention to the fact that a defendant has not testified."

Reversed and remanded for new trial.

HARRIS, C. J. & McFADDIN, J., concur in part and dissent in part.

CARLETON HARRIS, Chief Justice, (concurring in part; dissenting in part). I agree with the majority that the jury should not be informed of a defendant's prior criminal record during his trial for a current offense. Unquestionably, this could have some effect on the minds of the jurors in determining his guilt or innocence of the immediate offense charged.

However, after the defendant has been found guilty, I strongly feel that the jury should be apprised of the number of prior convictions, and should then fix the amount of punishment. Under the precedure set out by the majority, if a defendant, who has previously been convicted, pleads guilty to the previous conviction(s), the court, in its charge, will simply add one year to the minimum penalty for the offense charged (or 2 or 3 years, depending on the number of prior convictions), and the jury will never be aware that the defendant has a previous record. The majority say:

"If, on the other hand, there is a verdict of guilty and the minimum punishment assessed by the jury is less than that provided by the previous conviction statute, the defendant's guilt or innocence of the previous conviction charge can be submitted to the jury, and if there is a verdict of guilty on that charge, the punishment assessed by the jury on the principal offense can be increased to comply with the minimum provided by the previous conviction statute."

I strongly disagree with this procedure, and do not feel that it complies with thelegislative intent as ex-

I strongly disagree with this procedure, and do not feel that it complies with the legislative intent as expressed in the habitual criminal act. Ark. Stat. Ann. § 43-2328 (Repl. 1964) provides:

(1) If the second offense is such that, upon a first conviction, the offender could be punished by imprisonment for a term less than his natural life, then the sentence to imprisonment shall be for a determinate term *not less*[1] than one [1] year more than the minimum sentence provided by law for a first conviction.

---

[1] Emphasis supplied.

(2) If the third offense is such that, upon a first conviction, the offender could be punished by imprisonment for a term less than his natural life, then the person shall be sentenced to imprisonment for a determinate term not less than two [2] years more than the minimum sentence provided by law for a first conviction.

(3) If the fourth or subsequent offense is such that, upon a first conviction, the offender could be punished by imprisonment for a term [not][2] less than his natural life, then the person shall be sentenced to imprisonment for the fourth or subsequent offense for a determinate term not less than three [3] years more than the minimum sentence provided by law for a first conviction.''

The majority do not permit the jury to consider the accused's past criminal record in determining whether more than the minimum sentence should be given. I consider this holding at variance with the provisions of the act. If the Legislature had intended to provide the procedure set out in the majority opinion, it would only have been necessary in Sub-section (1) to provide, ''then the sentence to imprisonment shall be for one year more than the minimum sentence provided.'' But the act reads entirely different from such an interpretation, for it provides that for a second offense, [third, fourth or subsequent] the offender shall be imprisoned ''for a determinate term *not less*[3] than one year [two, or three years, respectively] more than the minimum sentence provided.'' This language, to me, clearly means that the jury may fix the sentence at any amount within the minimum (added for the prior offense or offenses), and the maximum penalty provided by law for the crime committed.

The majority offer no authority for reaching the present conclusions. In Volume 7, Arkansas Law Review, Page 334, there appears an article written by Edwin E. Dunaway, a former justice of this court. This article is entitled, ''Acts Affecting the Administration of the Criminal Law,'' and on Page 335, the author notes:

[2] The inclusion of this word is obviously an error in printing.
[3] Emphasis supplied.

"Many states have for years had habitual criminal laws in one form or another. Some have provided for doubling the penalties upon second and subsequent convictions. The original act in New York, the famous Baumes Law, provided for a mandatory life sentence upon conviction of a fourth or subsequent felony. Such stringent legislation led in practice to jury nullification, so that the trend in recent years has been toward allowing discretionary increases in penalties, but with higher minimum sentences *as a starting point.*"[4]

Comparison with procedures in other states is difficult to make, since statutes vary, but I have not been able to find a single state that permits only the adding of a short period of time to the minimum sentence of a convicted habitual criminal. In fact, several states add to the maximum penalty. In Michigan, for a second conviction, the defendant must be sentenced to imprisonment for a term not less than one-half of the longest term, and not more than one and one-half times the longest term prescribed for a first conviction. In New York, the law is similar—and there is no discretion in the trial judge. In Tennessee, one must have three felony convictions to be classed as an habitual criminal, but when this occurs, the defendant receives life with no parole, or reduced sentence for good behavior. In South Carolina, on the fourth conviction, the defendant receives the maximum prescribed for the crime involved. In Rhode Island, a person with prior convictions receives a twenty-five year maximum, in addition to any sentence imposed for the offense for which he was last convicted. Arizona, North Dakota, and Nebraska, likewise, provide substantial increases in the punishment for repeated offenders.

Summarizing, I am persuaded that it is a jury function to determine the punishment meted out to an habitual criminal; further that the Legislature intended that the jury should be informed of the defendant's past criminal record before setting the penalty, and, in my view, it is contemplated under the act that the punish-

---

[4] Emphasis supplied.

ment should vary between the minimum prescribed (for habitual offenders) and the maximum penalty provided by law.

I truly feel that the majority holding in this case has emasculated the habitual criminal act, and that the practical value of this act has been completely destroyed.

Mr. Justice McFaddin is also filing a written dissent in this case, and there is only one difference in our views, *viz,* he would have the jury first fix the punishment for the current case, and then the jury would hear the charges against the defendant as an habitual criminal. If he should be convicted on this count, the jury would (I presume) add additional punishment to the sentence that he had received for the current offense.

Under my theory, the jury would hear the current case, and determine only the man's guilt or innocence. If they returned a verdict of guilty, the evidence against the defendant as an habitual criminal would be submitted. The jury would then retire to the jury room to consider the punishment to be given the defendant, which procedure would, of course, permit them to take into consideration his prior record, if they found him to be an habitual offender.

For the reasons herein mentioned, I respectfully, but vigorously, dissent to the holding of the majority.

---

ED. F. McFADDIN, Associate Justice, (concurring in part; dissenting in part). I agree with what is stated in the Opinion of the Chief Justice. We are "plowing new ground" on this matter of submitting to the jury the situation as regards the habitual criminal act; and for the benefit of future legislation or future decisions I want to give a blueprint of my thinking as to how the situation should be handled:

1. In the trial of guilt or innocence of the offense charged, no mention should be made of previous convictions, whether admitted or denied.

2. The question of guilt or innocence and the fixing of sentence for the offense charged should be submitted to the jury as heretofore.

3. If the jury acquits on the issue of guilt or innocence, then the entire case is ended.

4. If the jury convicts the defendant of the offense charged, then the jury fixes the sentence for the offense.

5. After the jury has convicted and fixed the sentence, if prior convictions are involved, then the same jury is kept without discharge. If the defendant has pleaded guilty of prior convictions, the jury is so informed and told of the habitual criminal act and sent back to the jury room to deliberate on the matter of increase of sentence under the habitual criminal act; and the jury reports its verdict to the court on that issue and fixes additional sentence under the habitual criminal act.

6. After the defendant has been convicted under Paragraph 4 above, and if prior convictions are involved, then the same jury is kept without discharge. If the defendant has pleaded not guilty to previous convictions, the evidence is introduced to the jury on the previous convictions, with the right of the defendant to deny and offer counter evidence; and the issue is then submitted to the jury on previous convictions and the jury told of the habitual criminal act and sent back to the jury room to deliberate on guilt or innocence of previous convictions and increase of sentence under the habitual criminal act.

I think these steps, as I have outlined them, will take care of the situation in all instances and would be much better than the method contained in the Majority Opinion.