## ARKANSAS EMPLOYMENT SECURITY DIVISION v. NATIONAL BAPTIST CONVENTION U.S.A., INC.; NATIONAL BAPTIST HOTEL AND BATH HOUSE

81-248                                          630 S.W. 2d 31

Supreme Court of Arkansas
Opinion delivered March 29, 1982
[Rehearing denied April 19, 1982.*]

*PURTLE, J., would grant the petition.

*Herrn Northcutt,* for petitioner.

*Campbell & Campbell,* by: *R. Scott Campbell,* for respondent.

GEORGE ROSE SMITH, Justice. The question is whether the respondent, National Baptist Convention U.S.A., Inc., is required to pay the state employment security tax upon the payroll of employees at the Convention's combined hotel and bathhouse in Hot Springs.

The Convention is an association of some 7,000 Baptist churches throughout the United States. It owns the hotel-bathhouse. That establishment is run for profit and is open to the public except for a week every January when the Convention holds its midwinter meeting there. In this proceeding the Convention applied to the Employment Security Division for an exemption from the payroll tax. The Board of Review denied the exemption, finding that "the employees of the hotel and bathhouse are not employed by nor paid by the National Baptist Convention. Rather they are paid from a bank account carried in the name of the National Baptist Hotel and Bath House maintained in Hot Springs." The decision of the Board of Review was affirmed by the circuit court, but reversed by the Court of Appeals. *National Baptist Convention v. Ark. Employment Security Division,* 3 Ark. App. 189, 623 S.W. 2d 852 (1981). We granted certiorari to review a tax question of significant public interest and a point of statutory construction.

The issue is one of law, there being no dispute in the facts. The Convention's governing board appoints a three-member commission to supervise the Hot Springs estab-

lishment. When the case was presented below, one commissioner lived in Little Rock and another in New Orleans, the third position being vacant. The commissioners had employed E. L. Puckett as manager of the facility, and he in turn employed the persons working there. Net profits belong to the Convention.

The exemption now claimed by the Convention rests upon a subsection of our Employment Security Act (copied verbatim from the federal statute, 26 U.S.C. § 3309 [b]), which provides that the term "employment" does not apply to service performed:

> (i) in the employ of (I) a church or convention or association of churches, or (II) *an organization* [our italics] which is operated primarily for religious purposes and which is operated, supervised, controlled, or principally supported by a church or convention or association of churches. [Ark. Stat. Ann. § 81-1103 (i) (1) (D) (Repl. 1976).]

Thus the Convention is exempt under Clause I if the hotel and bathhouse staff are its employees. On the other hand, since the facility is not operated primarily for religious purposes, there is no tax exemption if the workers are employed by some subordinate organization controlled by the Convention.

The pivotal question, then, is: What is an organization under Clause II?

The Employment Security Act, owing to its many subsections, special provisions, and exceptions, appears at first blush to be complicated, but the statutory scheme as it applies to this case is actually simple. The taxes now in controversy, called contributions, are levied upon employers as payroll taxes. § 81-1108 (a) and (b). Such contributions are defined as the money to be paid by an "employing unit" having individuals in its employ. § 81-1103 (d). The legislative definition of an employing unit is decisive of this dispute:

"Employing unit" means any individual or *type of organization* [our italics], including any partnership, association, trust, estate, joint-stock company, insurance company or corporation ... which has ... one or more individuals performing services for it within this State. [§ 81-1103 (g).]

Thereafter, in this same Section 81-1103, the word *organization* is repeatedly used by itself, unquestionably as a shorthand reference back to the earlier definition that includes a partnership, association, trust, and so on. Thus what the section does is simply to define an employing unit (employer) as either an individual or an organization. As far as this case is concerned, the language of the statute contemplates no other form of employing unit.

The exemption now in question applies under Clause I to an "association of churches," which precisely describes the Baptist Convention, or applies under Clause II to some subordinate organization qualifying as an employing unit. No such entity exists in this case. The three-member commission does not have title to the property, has no funds of its own, is not a partnership or other form of organization, and merely employs Puckett to manage the facility. Thus there is wholly lacking the intermediate employing unit that would be required to pay the taxes if the Convention's own exemption is not applicable.

If there were any remaining doubt about the legislative intention to make subordinate personnel the direct employees of the first higher organization qualifying as an employing unit, that doubt would be completely dispelled by the following explicit subparagraph in the definition of an employing unit:

Each individual employed to perform or to assist in performing the work of any person in the service of an employing unit [here the Convention] shall be deemed to be engaged by such employing unit for all the purposes of this act, *whether such individual was hired or paid directly by such employing unit or by such person,* provided the employing unit had actual

or constructive knowledge of the work. [Our italics.] § 81-1103 (g) (2).

Hence neither the supervisory commission nor the manager of the establishment supplants the Convention as the employing unit. The Convention is therefore exempt under Clause I, the alternative Clause II being inapplicable.

We mention two minor aspects of the case. The Board of Review referred to our constitutional exemption of churches from property taxes, Ark. Const., Art. 16, § 5, pointing out that the hotel-bathhouse is not used for church purposes. This case, however, involves an excise tax, not a property tax. Second, counsel for the Employment Security Division quotes this observation from a tax-service publication: "Thus, the service of the janitor of a church is excluded, but the service of a janitor for a separately incorporated college, although it may be church related, is covered." CCH Unemployment Insurance Reports, § 1356, p. 4349 (1981). Of course the controlling difference is that in the example given the incorporated college would be a taxable organization, but there is no such taxable entity to be interposed in the case before us.

Affirmed.

ADKISSON, C.J., not participating.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. I dissent because I believe the majority has misinterpreted the employment security act. The part of the act in question is properly stated by the majority but, nevertheless, I wish to repeat it at this point:

. . . the term "employment" does not apply to service performed:

(i) in the employ of (I) a church or convention or association of churches, or (II) an organization which is *operated primarily for religious purposes* [my italics]

and which is operated, supervised, controlled, or principally supported by a church or convention or association of churches . . . (Ark. Stat. Ann. § 81-1103 (i) (1) (D) (Repl. 1976).)

It seems to me the majority holds that Clauses I and II are exactly the same in application. In other words, the majority's holding is that Clause II means any organization which is operated, supervised, controlled or principally supported by a church, convention or association of churches is exempt. This renders useless the words " . . . which is operated principally for religious purposes . . . " The majority has emphasized the two words "an organization" which is merely a descriptive phrase and has nothing to do with the intent involved. This section is designed to exempt the classifications stated in Clause I above and those in Clause II so long as they are operated principally for religious purposes.

Under the holding of the majority it is quite possible that a church could own a hog farm, furniture factory, ammunition supply depot, or chain of grocery stores and still be exempt from paying employment security taxes. I cannot bring myself to believe that such was the legislative intention when this was enacted. Theoretically, the churches, conventions, associations and other religious organizations could monopolize the employment market and entirely defeat the purposes of unemployment benefits.

The National Baptist Convention U.S.A., Inc. has its headquarters in Chicago, Illinois. It consists of 7,000 churches. One of the churches is not the Hot Springs Hotel and Bath House. In fact, the convention owns the bath house in Hot Springs which is in direct competition with other bath houses at least 90% of the time. If there is any religious purpose connected with the National Baptist Hotel and Bath House, other than the occasional meetings attended by church members, it is not revealed in the record. Admittedly, the religious use of the bath house amounts to less than 10% of the total use of the facility. None of the funds received from the operation of this business is deposited to the credit of the National Baptist Convention U.S.A., Inc. To the

contrary, the funds are deposited either to the account of the National Baptist Sanitarium or National Baptist Hotel. It is from these last mentioned funds that the employees are paid. No employees are paid by the National Baptist Convention U.S.A., Inc. The funds from which they are paid are generated by a business operated in head-to-head competition with other commercial businesses in Hot Springs, Arkansas.

In my opinion, when a church ventures outside its religious purposes and enters into the private business sector it should be guided by and subject to the same laws as others engaged in the same type business. If one person was employed by the National Baptist Bath House and another person by a neighboring bath house, each performing the same type of work until discharged through no fault of their own, the one could draw unemployment benefits but the one who had been employed by the Baptist Bath House could not draw benefits. This cannot conform to the intent of the legislative enactments as embodied in the plain language of the employment security act.

I cannot find any evidence in the record that the bath house is "operated principally for religious purposes," which is what it would take to convince me that the enterprise should be exempted. Therefore, I would reverse the holding of the Court of Appeals and reinstate the circuit court's judgment affirming the Employment Security Division.