# SOUTHWESTERN BELL TELEPHONE COMPANY
## v. ARKANSAS PUBLIC SERVICE COMMISSION

CA 86-148 727 S.W.2d 384

Court of Appeals of Arkansas
En Banc
Substituted Opinion on Denial of Rehearing
March 11, 1987.*

*Original opinion delivered February 11, 1987.

D.D. Dupre, Garry S. Wann, and *Friday, Eldredge & Clark*, by: *Herschel Friday* and *Jeff Broadwater*, for appellant.

*Ivy Lincoln, Arkansas Public Service Commission*, for appellee.

DONALD L. CORBIN, Chief Judge. On January 30, 1985, Southwestern Bell Telephone Company applied to the Arkansas Public Service Commission for permission to issue $700 million in unsecured debentures. The debentures would not create a lien upon or otherwise encumber any of Bell's property in Arkansas. Bell, incorporated under the laws of Missouri, stated in its application that it was placing the matter before the Commission solely as an "accommodation" and asserted that the PSC did not have jurisdiction over this securities transaction under Ark. Stat. Ann. Sections 73-254 (Repl. 1979) and 73-255 (Supp. 1985).[1] The PSC disagreed and, in its Order No. 1, asserted that Ark. Stat. Ann. Section 73-255 gave it jurisdiction over the debentures and approved the application without a formal hearing on February 4, 1985. Bell petitioned for rehearing on the issue of whether the Commission had jurisdiction to approve the issuance of the debentures and, after hearings, the Commission reaffirmed its earlier assertion of jurisdiction. Bell appeals, contending the PSC is incorrect in interpreting Ark. Stat. Ann. Section 73-255 to give it jurisdiction over this type debenture issue. We agree with

---

[1] Ark. Stat. Ann. Sections 73-254 and 255 were enacted as Sections 58 and 59 of Act 324 of 1935, as amended. The 1985 amendment to Section 73-255 did not alter any provision of Section 59 in the 1935 Act which is in contention here.

Bell and reverse.

For reversal, Southwestern Bell first claims that the Commission's assertion of jurisdiction over this debenture issue violates the commerce clause of the U.S. Constitution because the security transaction is in interstate commerce. Second, Bell claims the Commission's interpretation of Ark. Stat. Ann. Section 73-255 is arbitrary, capricious, unreasonable and not based on substantial evidence, and violates the intent of the General Assembly in enacting those statutes, as well as long-standing interpretation by the Commission in the past. Third, Bell claims the Commission violated Rule 5.01 of its own Rules of Practice and Procedure, which essentially recites the statutory language found in Ark. Stat. Ann. Section 73-255. Since the application of Arkansas statutes and rules of the Commission affords adequate relief to Bell, we need not reach the Company's argument that the Commission's action violates the commerce clause of the U.S. Constitution.[2]

 Ark. Stat. Ann. Section 73-255 (Supp. 1985) provides in pertinent part as follows:

> A public utility may, when authorized by order of the Commission, and not otherwise, issue stock, bonds, notes or other evidence of indebtedness payable at periods of more than thirty-six (36) months after the date thereof when necessary for the acquisition of property, the construction, extension or improvement of its facilities or the improvement of its service, or for the discharge or lawful refunding of its obligations, or reimbursement of moneys actually expended from the income from any source, or for any of such purposes.

Read alone, this statute can certainly be interpreted to require Commission approval prior to issuance of these debentures. However, Bell claims that Ark. Stat. Ann. Section 73-255 must be read in conjunction with Ark. Stat. Ann. Section 73-254. Section 73-254 provides, in pertinent part, as follows:

> The power of public utilities to issue stocks, stock certificates, bonds, notes and other evidences of indebtedness, in case of public utilities incorporated under the laws of this state, and to create liens on property in this state, in case of public utilities incorporated under the laws of any state or

---

[2] The commerce clause and other issues raised during argument are intriguing; however, the court believes that the better course is to decide the case at bar based on the issues as discussed herein.

foreign country, is a special privilege, the right of supervision, regulation, restriction and control of which is, and shall continue to be vested in the state, and such power shall be exercised as provided by law under such rules and regulations as the department [Commission] may prescribe.

When a dispute turns on the construction of acts of the General Assembly, it is beyond question that our task in resolving that dispute is to ascertain what the General Assembly intended and to give effect to that legislative intention. *Amason* v. *City of El Dorado*, 281 Ark. 50, 661 S.W.2d 364 (1983); *Hice* v. *State*, 268 Ark. 57, 593 S.W.2d 169 (1980). We construe a statute by the meaning of the expressed words of the statute, and if the language is clear and unambiguous, we must construe it in accordance with the language employed. *National Baptist Convention* v. *Arkansas Employment Security Division*, 3 Ark. App. 189, 623 S.W.2d 852 (1981), *aff'd*, 275 Ark. 374, 630 S.W.2d 31 (1982). If the statute is plain and unambiguous, this court has no authority to construe a statute to mean anything other than what it says. *Id.* The primary rule in the construction of a statute is to give effect to the intention of the lawmakers, and this intention is to be ascertained from a consideration of the entire act. *Arkansas State Highway Commission* v. *Mabry*, 229 Ark. 261, 315 S.W.2d 900 (1958).

▆▆ With these principles in mind, we hold that Ark. Stat. Ann. Section 73-255 [Section 59 of Act 324 of 1935] must be read in conjunction with Ark. Stat. Ann. Section 73-254 [Section 58 of Act 324 of 1935], as well as any other provisions of Act 324 of 1935 and the various amendments thereto whenever appropriate so as to give full effect to the intention of the Arkansas General Assembly. A fair reading of Section 59 in light of the provisions of Section 58 reveals that the legislature intended two classifications of utilities to be made when it enacted the language of those sections into law. First, the General Assembly classified public utilities "incorporated under the laws of this state" and conferred upon those utilities the "special privilege" of having the power to issue "stocks, stock certificates, bonds, notes and other evidences of indebtedness" under the supervision and regulation of the state. Second, the General Assembly classified public utilities "incorporated under the laws of any state or foreign country" into another category and conferred upon those utilities a "special privilege" consisting of the power, under the supervision and control of the state, to "create liens on property in this state." Southwestern Bell

Telephone Company is incorporated under the laws of Missouri. It is beyond dispute that the debenture issue in question here will not create a lien on property of Bell in this state. That being the case, and in light of the foregoing, the approval of the Arkansas Public Service Commission is not required.

 Rule 5.01 of the Public Service Commission's Rules of Practice and Procedure addresses the jurisdiction of the Commission as follows:

> Public utilities, incorporated under the laws of this State, must file a formal application for authority to issue stock, bonds, notes or other evidences of indebtedness payable at periods of more than thirty-six months (36), after the date thereof, and public utilities, incorporated under the laws of any state must file a formal application for authority to create liens upon properties in this State, under the provision of Sections 58 and 59 of Act 324 of 1935, as amended. (Ark. Stat. Ann. Sections 73-254 and 73-255 (Repl. 1979)).

Again, a fair reading of the plain language of this Rule, which by its very terms seeks to give effect to *both* sections 58 *and* 59 of Act 324 of 1935, leads to the conclusion that the Commission itself has in the past given proper consideration to the General Assembly's intentions. Indeed, the record reflects that the PSC has a long history of either disclaiming or failing to exercise jurisdiction over financing matters such as in this case. While it is true that an administrative agency's construction of a statute is not conclusive, and it is considered highly persuasive and is entitled to considerable weight, we should overturn the administrative construction when it is clearly wrong. *Arkansas Public Service Commission* v. *Allied Telephone Co.*, 274 Ark. 478, 625 S.W.2d 515 (1981); *Walnut Grove School District No. 6* v. *County Board of Education*, 204 Ark. 354, 162 S.W.2d 64 (1942). Here, the Public Service Commission broke with its long-standing interpretation and application of Ark. Stat. Ann. Sections 73-254 and 255, and its rule promulgated to give effect to those statutes and adopted an interpretation we think is contrary to existing statutory law.

 Finally, we note that the PSC is not without adequate means to guard against an ill-advised or imprudent debenture issue or other incurring of indebtedness by a company: the Commission may, in an appropriate exercise of its discretion, adjust a company's capital structure whenever such may be called for by the particular circumstances of a rate case. *Walnut*

*Hill Telephone Company* v. *Arkansas Public Service Commission*, 17 Ark. App. 259, 709 S.W.2d 96 (1986). All that is required is that the Commission act within the ambits of its statutory authority. *Id.* It follows, too, that the Commission must follow its own rules in so doing.

■ We hold that, where a public utility is incorporated under the laws of another state and is providing services within the State of Arkansas seeks to issue indebtedness which will neither create a lien upon nor otherwise encumber any utility assets in this state, and where the effect of that indebtedness on rates may be adequately addressed in the normal course of ratemaking by the Arkansas Public Service Commission, approval and other supervision of the issue by the PSC is not required under Ark. Stat. Ann. Sections 73-254 and 73-255.

Accordingly, we reverse and remand for an entry of an order consistent with this opinion. The order should include a provision for the return of the filing fee paid by Bell to the Commission for processing Bell's application.

Reversed and remanded.